Dennis E. JONES, Petitioner,

v.

Gerald BERGE, Respondent.

No. 00–C–0130.

United States District Court, E.D. Wisconsin.

Feb. 21, 2003.

1046

Pro se, for Plaintiff or Petitioner.

Marguerite M. Moeller, for Defendant or Respondent.

### DECISION AND ORDER

ADELMAN, District Judge.

Dennis E. Jones, a Wisconsin state prisoner, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1995 convictions of armed robbery, felon in possession of a firearm, and possession of a short barreled shotgun, for which he was sentenced to forty-six years in prison. Petitioner raises seven issues but one is dispositive: he was denied the assistance of counsel in connection with his direct appeal. *See Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Thus, I will issue a writ of habeas corpus requiring respondent to release petitioner within 120 days unless the State of Wisconsin grants him a new appeal with the assistance of appointed counsel. *See Betts v. Litscher*, 241 F.3d 594 (7th Cir. 2001); *Walker v. McCaughtry*, 72 F.Supp.2d 1025 (E.D.Wis.1999); *Wiscon-*

*sin ex rel. Toliver v. McCaughtry*, 72 F.Supp.2d 960 (E.D.Wis.1999); *Dumer v. Berge*, 975 F.Supp. 1165 (E.D.Wis.1997).

## I. BACKGROUND

On June 22, 1995, petitioner was convicted by a jury of the armed robbery of a Kenosha, Wisconsin delicatessen, possession of a firearm as a felon, and possession of a short-barreled shotgun.[1] Petitioner filed a notice of intent to pursue post-conviction relief in the trial court, and the State Public Defender ("SPD") appointed attorney John Anthony Ward to represent him on appeal. Ward obtained the transcripts of petitioner's trial and an extension of time to file a post-conviction motion or notice of appeal until March 29, 1996. Ward and petitioner conferred on or about March 27, and Ward advised petitioner that he believed petitioner had no meritorious appellate issues. Ward was about to advise petitioner that he (Ward) could either file a no merit report or withdraw without filing the report and allow petitioner to proceed pro se (and apparently to explain what that meant), when petitioner told Ward that he was fired. Petitioner asked Ward to contact the SPD and have a new appellate attorney appointed for him.

Ward apparently called the Appellate Division of the SPD on March 28 and spoke to a secretary, who reportedly advised him to write a letter to the SPD explaining the situation and not to worry about the March 29 deadline. On April 8, Ward wrote to the SPD relaying his conversation with petitioner and stating that he was closing his file. Ward did not file a motion to withdraw or otherwise advise the circuit court or court of appeals, and the March 29 deadline passed.

---

1. Because I resolve petitioner's case based on the appellate counsel issue, I need not engage in a lengthy discussion of the facts or of his other claims.

On or about July 17, petitioner wrote a letter to Ward stating that because Ward had declined to appeal his case it was agreed that Ward would withdraw and send his case back to the SPD for appointment of new counsel, and inquiring whether Ward had done so. On July 22, Ward's paralegal replied that the file had been closed, and that if petitioner wanted to pursue the matter he would have to do so on his own.

Unsatisfied, petitioner wrote to the Wisconsin Court of Appeals asking that counsel be appointed for him. The court ordered responses from Ward and the SPD regarding the status of Ward's representation. Ward advised the court that petitioner had fired him on March 27, and that he had taken no further action other than to provide petitioner with the file and ask the SPD to appoint another lawyer. The SPD advised that successor counsel would not be appointed because petitioner had not advised it of any meritorious issues for appeal.

On August 12, 1996, the court of appeals entered an order advising petitioner that he had three options: (1) allow Ward to continue representing him, which probably meant the filing of a no merit report; (2) discharge Ward and proceed pro se; or (3) discharge Ward and give up his appeal. The court explained that if he chose the first option he would have the opportunity to respond to the no merit report and raise issues he believed had merit.

On August 13, petitioner wrote to the SPD, stating that he had meritorious appellate issues, that he was not prepared to proceed pro se, and that he would not waive his right to appeal. However, the SPD declined to appoint new counsel for him. On August 29, petitioner responded to the August 12 order of the court of appeals, telling the court that Ward had not properly reviewed his case and had skipped a scheduled phone conference. Petitioner also stated that he was not learned in the law and, again, asked that a new lawyer be appointed. If the court declined, he wrote, it would be forcing him "to go pro se knowing that he is incompetent." (R. 78, Ex. 2 at 2.) He therefore stated that the options for the court were to "(1) appoint defendant counsel, or (2) force him to incompetently go pro se." (Id.)

On September 10, the court of appeals issued an order stating that petitioner had alleged that Ward had not done his job and that he wanted a new lawyer, but that it could not determine whether Ward had properly evaluated the case unless Ward was given the opportunity to explain his conclusion in a no merit report. Therefore, it declined to appoint new counsel. The court then wrote: "The defendant states that in the absence of the appointment of new counsel, he wishes to proceed pro se." (R. 50, Ex. 5 at 2.) It then discharged Ward and granted petitioner an extension of time to file a notice of appeal or post-conviction motion.

Petitioner filed a pro se post-conviction motion in the circuit court, lost, appealed, and lost again in the court of appeals. *State v. Jones,* 220 Wis.2d 714, 583 N.W.2d 673 (Ct.App.1998), 1998 Wisc.App. LEXIS 701. The Wisconsin Supreme Court denied his request for review. *State v. Jones,* 222 Wis.2d 674, 589 N.W.2d 628 (1998).

Petitioner then filed a habeas petition in this court. He raised the issue of ineffective assistance of appellate counsel but conceded that he had not exhausted it in the state courts. I dismissed the case without prejudice but advised petitioner that he could re-open the case after exhausting his state remedies. *Jones v. Berge,* 101 F.Supp.2d 1145 (E.D.Wis.2000).

On June 28, 2000 petitioner filed a petition for a writ of habeas corpus under *State v. Knight,* 168 Wis.2d 509, 484 N.W.2d 540 (1992) in the Wisconsin Court of Appeals.[2] He claimed that "the dynamics of a no-merit [report] were never explained" and that he "equated a no-merit brief with a waiver of his appeal." (R. 28, Ex. H at 5.) He wrote that he declined all three options provided by the court of appeals in its August 12, 1996 order but was forced to represent himself without any evaluation of his competency to proceed pro se, as required by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). He therefore argued that he was denied the right to appellate counsel provided in *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Petitioner also argued that Ward had been ineffective because he did nothing to advance the appeal despite the existence of meritorious issues.

On July 25, 2000, the court of appeals issued an ex parte order denying the petition. The court stated that petitioner responded to its August 12, 1996 order "with a request for the appointment of new counsel because Attorney Ward had not performed sufficiently. In the event new counsel was not appointed, Jones elected to proceed pro se although indicating reluctance to do so." (R. 28, Ex. I at 3.) The court noted that petitioner then proceeded on his own, and his conviction was affirmed.

The court declined to "address any aspect of Attorney Ward's performance because it did not occur before this court." (*Id.* at 4.) It stated that petitioner's refusal to allow Ward to file a no merit report foreclosed the court from evaluating his competency.

The court rejected petitioner's claim that he did not understand the dynamics of a no merit report, stating:

> Jones was told that he could compel the filing of a no merit report by both Attorney Ward and this court. This was adequate information about the no merit report. Indeed, in a letter to the State Public Defender, Jones demonstrated his familiarity with the significance of a no merit report when he indicated that in a separate criminal appeal, he had gotten an attorney from Attorney Ward's office (Attorney Lynn Bureta) replaced when that attorney indicated she wanted to file a no merit report.

(*Id.* at 4, citation omitted.)

The court next stated that it had "no independent duty to determine if Jones was competent to represent himself" after he had "waiv[ed] the right to a no merit report by appointed counsel." (*Id.*) In any event, it wrote that:

> competency can only be seriously questioned when a "specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist." Not then, and not now, does Jones suggest any particular disability that prevents competent representation on appeal. He does not contend that he lacked the necessary education, literacy or fluency in English. Indeed, his motions and appellant's brief were literate and fluent. There was no reason to suspect Jones's competency to proceed pro se after he rejected counsel's intent to file a no merit report.

---

**2.** In *Knight,* the Wisconsin Supreme Court held that a Wisconsin criminal defendant who wished to claim ineffective assistance of appellate counsel should petition for a writ of habeas corpus in the appellate court that heard the appeal. 168 Wis.2d at 520, 484 N.W.2d 540.

(*Id.* at 5, citation omitted, quoting *State v. Ruszkiewicz,* 237 Wis.2d 441, 460, 613 N.W.2d 893 (Ct.App.2000).)

Finally, the court rejected petitioner's claim that it "compelled him to choose between two constitutionally offensive options of either accepting Attorney Ward's no merit report or proceeding, pro se. Since Jones had the opportunity for representation by counsel but directed counsel not to file a no merit report, he cannot complain that he was denied counsel." (*Id.*)

The Wisconsin Supreme Court denied petitioner's request for review, and petitioner then re-opened his habeas petition in this court. The issues have been fully briefed and are ready for decision.

## II. STANDARD OF REVIEW

A writ of habeas corpus may be granted only if the state court decision under review (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court]." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of Supreme Court precedent occurs when "the state court identifies the correct governing legal rule ... fies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495.

*Dixon v. Snyder,* 266 F.3d 693, 700 (7th Cir.2001).

I review the state court's legal conclusions de novo. However, in order to issue a writ of habeas corpus, the state court decision must be both incorrect and unreasonable. *Id.; see also Williams,* 529 U.S. at 411, 120 S.Ct. 1495 (holding that the term "unreasonable" is not synonymous with "erroneous" or "incorrect").

Finally, on habeas review a state court's factual findings are presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

In its July 25, 2000 order denying petitioner's *Knight* petition, the state court determined that petitioner had not been denied the assistance of appellate counsel. I now turn to the question of whether this decision was contrary to or based on an unreasonable application of settled federal law as established by the Supreme Court.

### A. Clearly Established Supreme Court Case Law

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held that the Amendment withholds from

courts "in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The right to the assistance of counsel

> is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . . . It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is represented by experienced and learned counsel.

*Id.* at 462–63, 58 S.Ct. 1019.

■ The right to counsel applies in both federal and state courts, *see Gideon v. Wainwright,* 372 U.S. 335, 343–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); at trial and in the defendant's first appeal as of right, *see Douglas v. California,* 372 U.S. 353, 355, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).[3] If the defendant is indigent, the state must furnish him with appointed counsel for his defense. *Alabama v. Shelton,* 535 U.S. 654, 122 S.Ct. 1764, 1767, 152 L.Ed.2d 888 (2002); *Scott v. Illinois,* 440 U.S. 367, 374, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).[4] However, this does not mean that a defendant has the right to appointed counsel of his choice or the right to insist that the attorney advance every argument,

regardless of merit. *See Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ In an effort to balance these two principles in the appellate context, the Court has established certain procedures appointed counsel must follow if he or she concludes that a defendant's appeal lacks merit. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). First, counsel must conduct a "conscientious examination" of the case. Second, any motion by counsel to withdraw following such examination must be based on an opinion that the appeal is frivolous and be accompanied by a brief referring to anything in the record that might arguably support the appeal. Third, the defendant must be furnished a copy of the brief and allowed to raise any points that he chooses. And fourth, the appellate court must conduct a thorough examination and decide whether the appeal is wholly frivolous. If the court concludes that there are non-frivolous issues, it must afford the indigent defendant the assistance of counsel to argue the appeal. *Id.* at 744, 87 S.Ct. 1396.

■ Of course, a defendant may waive his right to the assistance of counsel. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. But such waiver must be intel-

---

3. The United States Constitution does not require states to grant appeals as of right to criminal defendants. *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "Nonetheless, if a State has created appellate courts as an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* (citation and internal quote marks omitted).

Wisconsin's appellate courts are an integral part of its criminal justice system, and the Wisconsin Constitution guarantees a criminal defendant the right to a direct appeal from his conviction. *State ex rel. Flores v. State,* 183 Wis.2d 587, 604–05 n. 3, 516 N.W.2d 362 (1994) (citing Wis. Const. art. I, § 21).

4. Counsel must be appointed only if the prosecution results in actual imprisonment. *Shelton,* 122 S.Ct. at 1767.

ligent and competent, *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525; *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019; and can be accepted only if the defendant "knows what he is doing and his choice is made with eyes open." *Adams,* 317 U.S. at 279, 63 S.Ct. 236 (citing *Johnson,* 304 U.S. at 468, 469, 58 S.Ct. 1019).[5] While a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently waive his right to counsel, he should be made aware of the dangers and disadvantages of self-representation before so choosing. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525.

> The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution.

*Johnson,* 304 U.S. at 465, 58 S.Ct. 1019.

■■ Courts indulge every reasonable presumption against waiver of the fundamental right to assistance of counsel. *Id.;* see also *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (stating that this "strict standard applies" at all critical stages). In *Johnson,* the Court explained:

> [W]e do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

304 U.S. at 464, 58 S.Ct. 1019 (internal quotation marks and footnote omitted).

Whether there is a proper waiver should be clearly determined by the court, "and it would be fitting and appropriate for that determination to appear upon the record." *Id.* at 465, 58 S.Ct. 1019. "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

Supreme Court precedent does not dictate any specific procedure—such as a hearing—for finding waiver.[6] However, the Court has stated that before accepting waiver the court should engage in a "searching or formal inquiry" into the defendant's understanding of the waiver and awareness of the dangers and disadvantages of self-representation. *Patterson v. Illinois,* 487 U.S. 285, 299, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); see also *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion) (stating that the court should make a "penetrating and comprehensive examination of all the circumstances" surrounding the waiver of counsel, investigat-

---

5. The standard for waiver is the same for both trial and appellate counsel. *See Swenson v. Bosler,* 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967) (holding that waiver of the right to counsel on appeal must be "knowingly and intelligently" made).

6. The Seventh Circuit has indicated that because appellate courts do not engage in face-to-face dialogue with defendants a waiver of the right to appellate counsel generally is accomplished through written communication rather than a hearing. *Oimen v. McCaughtry,* 130 F.3d 809, 812 (7th Cir. 1997). The Wisconsin Court of Appeals has recently said the same. *State v. Thornton,* 2002 WI App. 294, ¶ 22, 656 N.W.2d 45.

ing the defendant's apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter").[7]

■ Finally, while a claim that counsel's performance was ineffective requires a showing of prejudice before a habeas petition can be granted, *see Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the complete deprivation of counsel does not, *Penson*, 488 U.S. at 88, 109 S.Ct. 346. Actual denial of any assistance of counsel, whether at trial or on appeal, is presumed to result in prejudice and can never be treated as harmless error. *Id.* A proceeding is simply unfair if the accused is denied counsel at a critical stage. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

## B. Application of Standard to State Court Decision

In its July 25, 2000 decision, the court of appeals dismissed petitioner's claim that he was denied counsel with a single sentence: "Since Jones had the opportunity for representation by counsel but directed counsel not to file a no merit report, he cannot complain that he was denied counsel." (R. 28, Ex. I at 5.) There are two fundamental problems with this ruling.

## 1. Clear and Intentional Relinquishment

■ First, the court did not find, at any point, that petitioner actually waived the right to the assistance of appellate counsel. The court simply equated petitioner's "choice" not to have Ward file a no merit report with waiver of the right to have a lawyer. This flies in the face of the Supreme Court's admonition that courts must indulge every reasonable presumption against waiver and cannot presume acquiescence in the loss of fundamental rights. *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* Before waiver may be found, the court must clearly determine that the defendant has intelligently and competently decided to proceed pro se. *Id.* at 465. The court of appeals cited no communication from petitioner in which he clearly indicated the desire to represent himself. In fact, the record reveals precisely the opposite. In his response to the court's August 12, 1996 order petitioner indicated that he was *not* prepared to proceed pro se and implored the court to appoint counsel. In the face of this response, the best the court of appeals could say was that "Jones elected to proceed pro se although indicating reluctance to do so." (R. 28, Ex. I at 3.) Petitioner expressed more than reluctance; he indicated that he would not be competent to represent himself. To construe this as a waiver acceptable under *Johnson* and its progeny was clearly unreasonable.[8]

---

7. The federal courts of appeal have adopted similar standards. *See, e.g., United States v. Sandles*, 23 F.3d 1121, 1126 (7th Cir.1994). I note that in *State v. Klessig*, 211 Wis.2d 194, 206, 564 N.W.2d 716 (1997), the Wisconsin Supreme Court adopted standards for waiver of trial counsel even more stringent than those set forth in *Sandles*. In *State v. Thornton*, the Wisconsin Court of Appeals adopted similarly strict standards for waiver of appel-

late counsel. 2002 WI App. 292, ¶¶ 21–23, 656 N.W.2d 45.

8. It is true that a defendant can waive the right to counsel through his conduct as well as his words. *Hall v. Washington*, 106 F.3d 742, 751 (7th Cir.1997). But cases of waiver by conduct typically involve defendants who refuse to cooperate with appointed counsel or engage in other misconduct, despite warnings that they may be forced to proceed pro se if

In *Hendricks v. Zenon*, 993 F.2d 664 (9th Cir.1993) the court confronted a similar situation. There, the defendant became dissatisfied when his appointed appellate lawyer refused to raise issues that he believed had merit, and he asked the state court of appeals to remove her and appoint new counsel, even after the public defender warned him that the court might not allow him another lawyer. Based on the deterioration of her relationship with the defendant, counsel also moved to withdraw. *Id.* at 668. The court granted the motion to withdraw but declined to appoint another lawyer, effectively forcing the defendant to proceed pro se. The defendant asked the court to reconsider its denial, but it refused; he proceeded pro se and his conviction was affirmed. *Id.*

The defendant sought habeas relief in federal court, but the district judge denied the petition in language strikingly similar to that of the court of appeals here: "Noting Hendricks's counsel had warned him that his motion for appointment of new counsel might be denied, the district court held that 'petitioner could not be heard to complain that he was "forced" to proceed pro se.' " *Id.* The Ninth Circuit reversed, stating:

> The first problem we encounter with this case is that Hendricks never requested to proceed pro se. He was forced into this posture when his request for substitute counsel was denied and the public defender withdrew her brief. It is difficult to construe Hendricks's behavior as a request to proceed without counsel, much less an unequivocal request for self-representation.... In the instant case, the record is entirely devoid of Hendricks making even one request to represent himself. The State

relies on the fact that Hendricks moved for the removal of his counsel as indicia of a request to proceed pro se. The motion for removal of counsel was made in conjunction with a motion for appointment of new counsel. At no time did the defendant ever express a desire to proceed pro se. He merely moved for substitution of counsel. The State's argument is manifestly wrong. Thus, we conclude Hendricks did not make an unequivocal request to proceed pro se. *Id.* at 669.

Like Hendricks, petitioner asked for a new lawyer when he disagreed with his appointed counsel. He did not ask to proceed pro se. The fact that he may not have been entitled to another lawyer does not mean that he was entitled to *no* lawyer. As the court stated in *Hendricks*:

> Stripped to its essential core, the conclusion of the Oregon Court of Appeals is that a motion to substitute counsel amounts to a forfeiture of the right to appointed counsel on direct appeal. This view is untenable. There is nothing in the record to justify such a holding.... If the Court of Appeals was going to deny his motion for substitution, it was compelled to keep the public defender in place to represent him, not forfeit his right to counsel.

*Id.* at 670–71.

Likewise, in *United States v. Meeks*, 987 F.2d 575, 579 (9th Cir.1993), the court found a denial of the right to counsel when the court simultaneously granted a request to withdraw but denied a request for substitution. In that case, the defendant sought the removal of his court appointed attorney and an adjournment so that his newly retained counsel could get up to

their obstreperousness continues. *See id.* (collecting cases). On the record before me, there is no evidence that petitioner refused to

cooperate with counsel and thereby waived counsel through his own misconduct.

speed and be substituted. *Id.* at 576. The court, frustrated with the defendant's delaying tactics, granted appointed counsel's motion to withdraw but denied the request for substitution, and the defendant went to trial pro se. The court of appeals reversed, stating:

Meeks ... had appointed counsel, Van Camp. The court, not Meeks, was in control of whether or not Van Camp continued his representation. It erred in denying Meeks' motion to substitute counsel while, at the same time, granting Van Camp's motion to withdraw. By doing so, it waived Meeks' right to counsel for him, leaving him without representation. The court did not make Meeks aware of the dangers of proceeding pro se, nor does the record indicate that he knew of them....

The court had several options. It could have (1) denied both Meeks' and Van Camp's motions leaving Van Camp as Meeks' attorney, (2) granted both motions and appointed Hemovich or (3) given Meeks the opportunity to knowingly and intelligently waive his right to counsel and to proceed pro se. The court erred in employing none of these options.

*Id.* at 579. In the present case, the court of appeals also committed constitutional error when it waived petitioner's right to counsel for him.

Finally, in *Betts*, the Seventh Circuit recently granted a writ when the defendant was denied the assistance of appellate counsel. 241 F.3d at 597. There, the defendant and his appointed appellate lawyer disagreed as to the merit of his appeal. However, rather than moving to withdraw, counsel had her supervisor at the public defender's office send the court a letter stating that the defendant had declined an opportunity to have a no merit report filed and elected to proceed pro se. The defendant, however, wanted a lawyer and made multiple requests to the court, all of which were denied. *Id.* at 595. Eventually he gave up on counsel and proceeded pro se; not surprisingly, his convictions were affirmed. *Id.* at 596.

The district judge denied habeas relief, but the Seventh Circuit reversed. The court found that under these circumstances the defendant never waived his right to counsel; to the contrary, he "vociferously asserted that he wanted" a lawyer. *Id.* The only support for waiver was the public defender's letter stating that the defendant elected to proceed pro se. Because no clear statement of waiver from the defendant appeared in the record, and because the state courts had not clarified the issue, the Seventh Circuit found that *Penson* had been violated and granted habeas relief. *Id.* at 596–97.

Respondent relies on *Oimen v. McCaughtry*, but that case is inapposite. In *Oimen*, the state court proceeded more cautiously before allowing appointed counsel to withdraw and the defendant to proceed pro se.

The court of appeals advised Oimen in writing that he might not be granted new appellate counsel if [appointed counsel] were allowed to withdraw and therefore he might be forced to proceed pro se. Oimen was ordered to advise the court whether, knowing that he may be forced to proceed pro se, he still wanted to continue in his motion to have [appointed counsel] removed. Oimen assured the court in writing that that is what he wanted. And he got what he asked for.

130 F.3d at 811. The Seventh Circuit therefore found a valid waiver because the defendant "clearly signaled his willingness to proceed pro se if [then-appointed counsel] was his only other choice." *Id.* at 812. In this case, petitioner did not indicate

that he wanted to proceed pro se; to the contrary, he clearly stated that he was not prepared to do so.

Further, the defendant in *Oimen* was not in the precarious position that petitioner was in at the time he requested a new lawyer. In *Oimen,* appointed counsel had already filed a brief in the court of appeals.[9] Therefore, the defendant "must have known that he had a right to an appellate decision on the existing brief." *Betts,* 241 F.3d at 596 (discussing *Oimen* ). In the present case, however, petitioner's appointed counsel had done nothing; he had not filed a motion for post-conviction relief or a notice of appeal, much less briefed the issues in the court of appeals such that a decision could have been rendered. At the time petitioner made the statement that the court of appeals construed as a "waiver" he was being "represented" by a lawyer who had allowed his deadline to appeal to pass without taking any action and who had closed his file without filing a motion to withdraw. *Cf. Crandell v. Bunnell,* 25 F.3d 754, 755 (9th Cir.1994) (stating that a defendant cannot be forced to make a choice between waiver and incompetent counsel); *United States v. Silkwood,* 893 F.2d 245, 249 (10th Cir. 1989) (holding that waiver is not voluntary where the defendant is forced into a Hobson's choice between incompetent or unprepared counsel and appearing pro se).

The court of appeals' decision finding waiver was contrary to and an unreasonable application of *Johnson* and its progeny because petitioner never clearly relinquished his fundamental right to the assistance of counsel, by word or deed. Forcing petitioner to proceed without counsel was clear constitutional error, without regard to the merit of the issues he wished to raise on appeal, *Penson,* 488 U.S. at 88, 109 S.Ct. 346, and so the writ must issue.[10] *See Hall v. Moore,* 253 F.3d 624, 628 (11th Cir.2001) (granting habeas relief where defendant lacked counsel at sentencing and did not "clearly and unequivocally assert his right to self-representation" such that waiver could be found); *Toliver,* 72 F.Supp.2d at 967, 979 (granting habeas relief upon finding of no valid waiver where defendant sent letter to court agreeing that counsel should withdraw and requesting that a new lawyer be appointed); *cf. Reese v. Nix,* 942 F.2d 1276, 1282 (8th Cir.1991) (finding no clear and unequivocal request to proceed pro se based on impulsive statement made by defendant after request for new counsel was denied); *Jackson v. Ylst,* 921 F.2d 882, 889 (9th Cir.1990) ("Jackson's comments did not demonstrate unequivocally that he desired to represent himself. Instead, it is quite clear that he wanted to be represented by a different attorney in his efforts to demonstrate that his trial counsel was incompetent.").

---

**9.** The problem, in Oimen's mind, was that the brief did not argue a particular issue that he believed had merit.

**10.** In support of its holding on the waiver issue the court of appeals cited *State v. Divanovic,* 200 Wis.2d 210, 546 N.W.2d 501 (Ct. App.1996). While federal habeas decisions must be based on Supreme Court case law and I therefore need not discuss state cases, I note that *Divanovic* does not support the proposition that petitioner waived his right to counsel. In *Divanovic,* the defendant ordered his appointed counsel not to participate in the

trial. *Id.* at 217, 546 N.W.2d 501. Following his conviction, the defendant apparently had a change of heart as to the wisdom of this strategy and argued that he was denied the effective assistance of counsel. The court rejected the argument, stating that counsel "was duty bound to abide by Divanovic's instructions, and Divanovic cannot now be heard to complain that [counsel] followed such directives." *Id.* at 225, 546 N.W.2d 501. In this case, petitioner did not reject the assistance of a lawyer; he simply requested a different lawyer.

## 2. Knowing and Intelligent Waiver

Second, even if petitioner's August 29, 1996 letter could be construed as a waiver of his right to the assistance of counsel, there was no evidence from which the court could have concluded that it was a knowing and intelligent waiver.

Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams,* 317 U.S. at 279, 63 S.Ct. 236).

■■■ There is no evidence in the record that petitioner was advised, orally or in writing, of the pitfalls of self-representation. The state court of appeals ignored this problem and discussed only petitioner's understanding of a no merit report.[11] And its conclusions in that regard are not supported by the record.

The court stated: "Jones was told that he could compel the filing of a no merit report by both Attorney Ward and this court. This was adequate information about the no merit option." (R. 28, Ex. I at 4.) However, the record shows that petitioner discharged Ward *before* Ward could explain what a no merit report was, and that Ward made no further effort to help petitioner understand the situation he was in. The court of appeals acknowledged as much in its August 12, 1996 order. (*See* R. 28, Ex. B at 2.) Therefore, in assessing petitioner's knowledge of the no merit procedure, the court could not reasonably rely on advice that Ward had provided.

Moreover, in its August 12, 1996 order the court failed to explain that the final decision as to whether petitioner's appeal had merit would be made by the court, and that if the court found merit, it would appoint a lawyer for petitioner, as required by *Anders.* As the court stated in *Betts:* "Understanding one's options is an essential ingredient of waiver when the right at stake is counsel." 241 F.3d at 596 (citing *Johnson,* 304 U.S. 458, 58 S.Ct. 1019). But petitioner was essentially left in the same spot as Betts. *See id.* ("If they told Betts that his only options were either self-representation or a conclusive no-merit brief (= no representation), they gave him bad advice, for the court must review and may reject a no-merit report and either direct counsel to continue or appoint new counsel."). There is no evidence that petitioner knew of the court's role in the no merit procedure.[12]

---

11. In *Thornton,* the Wisconsin Court of Appeals adopted the following standards for waiver of appellate counsel: "Before a court may conclude that a criminal defendant has knowingly and voluntarily waived his or her right to counsel on direct appeal, it must satisfy itself that the defendant is aware: (1) of the *Flores* rights (to an appeal, to the assistance of counsel for the appeal, and to opt for a no-merit report); (2) of the dangers and disadvantages of proceeding pro se; and (3) of the possibility that if appointed counsel is permitted to withdraw, successor counsel may not be appointed to represent the defendant in the appeal." 2002 WI App. 294, ¶ 21, 656 N.W.2d 45 (footnote omitted). I recognize that only United State Supreme Court decisions may be relied upon as statements of law in habeas cases, and that *Thornton* was decided over two years after the decision at issue here. It is nevertheless worth noting that petitioner's waiver would have clearly been invalid under the *Thornton* test.

12. Respondent notes that the court of appeals cited *Flores* in its August 12, 1996 order, and that petitioner could have read that case to learn about the mechanics of the no merit procedure. I cannot conclude that referring a pro se litigant to a case that contains certain information about no merit reports (but does not discuss the pitfalls of self-representation)

In its July 25, 2000 decision, the court of appeals also stated that petitioner had demonstrated his familiarity with the significance of a no merit report in a letter to the SPD in connection with a different case where "he had gotten an attorney from Attorney Ward's office (Attorney Lynn Bureta) replaced when that attorney indicated she wanted to file a no merit report." (R. 28, Ex. I at 4.) Aside from the question of whether the validity of a waiver may properly be assessed based on correspondence sent in a different case,[13] the letter itself suggests a different conclusion from that reached by the state court. If petitioner really believed that the filing of a no merit report meant the end of his appeal, the fact that he wrangled the appointment of successor counsel in another case where his first lawyer wanted to file such a report is evidence that he believed a new lawyer was needed to salvage *this* appeal as well. At best, the court of appeals' findings with respect to petitioner's understanding of a no merit report are ambiguous; they are clearly insufficient to show a knowing and intelligent waiver.

At bottom, the court's conclusion on the question of whether petitioner's waiver was knowing and intelligent suffers from the same flaw as its conclusion that petitioner clearly and intentionally relinquished the right to counsel: the court assumed that because petitioner did not want Ward to file a no merit report (and may have understood what that meant), he did not want any lawyer (and understood the consequences of that choice). The record does not support the court's assumption. *Compare United States v. Taylor,* 113 F.3d 1136, 1143–44 (10th Cir.1997) (finding waiver invalid where defendant acquiesced in withdrawal of appointed lawyer and proceeded pro se, but court failed to explore whether waiver was knowing and intelligent or whether defendant was rejecting any assistance of counsel); *with United States v. Willie,* 941 F.2d 1384, 1389 (10th Cir.1991) (finding valid waiver where defendant informed the court that he would not accept *any* court-appointed attorney and objected to any attempt by the judge to violate his right of self-representation).[14]

---

is adequate to ensure a knowing and intelligent waiver.

**13.** Respondent has determined which case the court was referring to but has been unable to locate the letter. Thus, I have nothing to go on but the court's paraphrase.

**14.** The question arises—what should appellate courts do in situations such as this? Must they be bullied into appointing new lawyers for every malcontent in the state prison system? The simple answer was provided in *Hendricks:* "If the Court of Appeals was going to deny his motion for substitution, it was compelled to keep the public defender in place to represent him, not forfeit his right to counsel." 993 F.2d at 671. If the defendant then clearly indicates a desire to proceed pro se rather than accept the services of appointed counsel with the knowledge that no new lawyer will be appointed, and the court is satisfied that the decision is knowing, intelli-

gent, and competent, made with full knowledge of the consequences, the defendant may proceed pro se. *See Thornton,* 2002 WI App. 292, ¶ 21, 656 N.W.2d 45. But a mere expression of dissatisfaction with appointed counsel and request for a new lawyer cannot be equated with waiver of such a fundamental right. Finally, the presumption against waiver in this situation is bolstered by the fact that there is no federal constitutional right to self-representation on appeal. *Martinez v. Court of Appeal,* 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). Therefore, the appellate court confronted with an ambiguous request to proceed pro se is not, as is a trial judge, placed "between the Scylla of trammeling the defendant's constitutional right to present his own defense, and the Charybdis of shirking its constitutional duty to ensure that the defendant only represents himself with full awareness that the exercise of that right is fraught with dangers." *Sandles,* 23 F.3d at 1127 (internal citations and quotation marks

■ Nor can respondent rely on the fact that petitioner may have known that, if Ward were discharged, another lawyer might not be appointed. As the court noted in *Hendricks,* a warning that the court might not appoint a new lawyer is insufficient to demonstrate a knowing and intelligent waiver of the assistance of any lawyer. 993 F.2d at 670. Because the court's finding that petitioner knowingly and intelligently waived counsel was contrary to and an unreasonable application of *Faretta* and its progeny, the writ must issue.[15]

## IV. REMAINING CLAIMS

Because I resolve this petition based on the denial of appellate counsel, I decline to address the other issues petitioner has raised. Petitioner is free to raise any or all of these claims in the "new" appellate proceeding he is being afforded. *See Toliver,* 72 F.Supp.2d at 979.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that petitioner's petition for a writ of habeas corpus is **GRANTED,** and that petitioner be released unless within 120 days of the date of this decision the State of Wisconsin affords petitioner a new appeal with the assistance of appointed counsel.

**IT IS FURTHER ORDERED** that petitioner's request to file an over-sized reply brief is **GRANTED,** and that petitioner's request for an evidentiary hearing is **DENIED** as moot.

---

omitted). In sum, counsel should remain unless the request to proceed pro se is clear and informed. In its recent *Thornton* decision, the Wisconsin Court of Appeals appears to have adopted standards sufficient to ensure that waivers of appellate counsel are consistent with federal constitutional standards.

**15.** The court of appeals also held that it had no duty to determine whether petitioner was competent to represent himself after he waived the right to a no merit report. Even if it had such a duty, it noted that there was no indication that petitioner suffered from any specific problem or disability calling his competency into question. I note that in his August 29, 1996 letter petitioner specifically advised the court that he was not competent to represent himself. There may have been some confusion, however, between what petitioner meant and the court meant by "competent." The Supreme Court has held that the standard for determining competence to waive the right to counsel is the same as that for determining competence to stand trial: The defendant need only have a rational and factual understanding of the proceedings against him. *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

In other words, the defendant need not have the legal and technical skills to ably defend himself, as a lawyer would, in order to waive the services of counsel. It does not appear that petitioner ever claimed—as the court of appeals presumed—that he was "incompetent" due to some mental disease or defect, illiteracy, or lack of intelligence. His statements regarding competence were designed to bolster his request for new, appointed counsel. Thus, while I cannot say that the court of appeals was wrong on this issue, *see id.* at 401 n. 13, 113 S.Ct. 2680 (stating that "a competency determination is necessary only when a court has reason to doubt the defendant's competence"), it misunderstood what petitioner was asserting. Moreover, as the *Godinez* Court was careful to note: "A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to . . . waive his right to counsel. In addition to determining that a defendant who seeks to . . . waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Id.* at 400, 113 S.Ct. 2680. As explained, the waiver in this case, if waiver it was, fell short of that standard.