STATE of Wisconsin EX REL. Perry VAN HOUT,
Petitioner;†

v.

Jeffrey ENDICOTT, Warden, and Redgranite
Correctional Institution, Respondents.

Court of Appeals

*No. 2004AP1192–W. Submitted on petition August 24, 2006.
—Decided September 13, 2006.*

2006 WI App 196

(Also reported in 724 N.W.2d 692.)

---

† Petition to review denied 12/5/06.

On behalf of the petitioner, the cause was submitted on the petition of *Robert R. Henak* of *Henak Law Office, S.C.*, Milwaukee.

On behalf of the respondents, a response was submitted by *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general; and *Kenneth R. Kratz*, district attorney, Chilton.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. PER CURIAM Perry Van Hout, by counsel, petitions for a writ of habeas corpus under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). Van Hout contends that he was deprived of an appeal by his appointed appellate counsel's actions and this court's decision to permit appointed appellate counsel to withdraw. Van Hout seeks reinstatement of his WIS. STAT. RULE 809.30 (1995–96)[1] appeal rights from a 1995 conviction. Van Hout's petition is properly filed in this court. *State ex rel. Smalley v. Morgan*, 211 Wis. 2d 795, 798–99, 565 N.W.2d 805 (Ct. App. 1997), *criticized on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, ¶ 29, 290 Wis. 2d 352, 714 N.W.2d 900. We

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

ordered a response to the petition from the respondents, and Van Hout filed a reply to the response.

¶ 2. Van Hout argues that an evidentiary hearing is neither necessary nor appropriate because all the relevant facts are in the record as undisputed attachments to the petition, and we are as competent to interpret them as the circuit court. Van Hout also argues that there are not any reasonable disputes over the relevant facts. The respondents suggest that fact finding might be necessary. We agree with Van Hout, and we decide this petition based upon the documents before this court.[2]

¶ 3. We hold that on the undisputed facts, Van Hout, by his conduct, knowingly and intelligently waived his right to counsel on direct appeal from his 1995 conviction after he received the required information about his postconviction options and warnings about proceeding pro se. Under the facts of this case, appointed counsel did not perform deficiently in moving to withdraw from the representation. Van Hout later permitted his appeal rights to lapse. We decline to reinstate the appeal rights.

¶ 4. These are the undisputed facts gleaned from the documents before this court. In 1995, Van Hout pled guilty to two counts of sexual contact with a child under thirteen and received an eighty-year sentence. The state public defender appointed Margaret Maroney to represent Van Hout on appeal. Maroney moved the court for extensions of time to act under WIS. STAT. RULE 809.30 because she and Van Hout disagreed about the

---

[2] We also take judicial notice of our own records from Van Hout's past appearances in this court: *State v. Van Hout*, 1996XX7787–CR, and *State ex rel. Van Hout v. Pitzer*, 2000AP1125–W.

case: she concluded that the case lacked arguable merit for an appeal; Van Hout wanted an advocacy brief. In a May 17, 1996 order extending the time to commence postconviction proceedings, we told Van Hout that if he discharged counsel, he would be responsible for complying with the rules of appellate procedure and determining how to proceed and that it was unlikely new counsel would be appointed if he later decided that it was a mistake to discharge counsel. We also described the WIS. STAT. RULE 809.32 no-merit appeal procedure and our role in such an appeal.

¶ 5. Van Hout then filed a grievance against Maroney and asked for new counsel. In a June 6, 1996 letter to counsel, Van Hout stated, "I do not want you to file a [WIS. STAT. RULE 809.32] no-merit report in my behalf." In a June 19, 1996 order, we held that Van Hout's complaints about counsel and his disagreement with her about how to proceed on appeal were not sufficient grounds to discharge counsel and appoint new counsel. We told him that counsel could file a RULE 809.32 no-merit report. Because Van Hout did not state that he wanted to proceed pro se, we stated that counsel remained of record, and we extended the postconviction deadlines.

¶ 6. On July 29, 1996, we received Maroney's motion to withdraw. Maroney stated that she had explained Van Hout's options to him (no-merit report, proceed pro se or by retained counsel, or close the file without a no-merit report), and Van Hout had declined a no-merit report. Van Hout did not respond to the motion to withdraw, and we later learned that he had declined to accept delivery of the envelope containing counsel's motion to withdraw.

¶ 7. In an August 8, 1996 order granting counsel's motion to withdraw, we concluded that counsel dis-

charged her obligation to Van Hout by informing him of his options, but Van Hout declined to exercise any of those options. Van Hout did not respond to our June 19 order declining to give him new counsel, and he did not respond to counsel's motion to withdraw. Counsel lacked direction on how to proceed because Van Hout had earlier directed her not to file a no-merit report. We concluded that Van Hout's failure to object to the motion to withdraw was a concession that he wanted counsel to withdraw and that he would proceed pro se.

¶ 8. In March 1997, Van Hout moved this court pro se to reinstate his appeal rights because Maroney had an extension of time to act and did not do so. Van Hout claimed that he had been suffering from extreme depression and could not, from June 1995 to March 1997, act on his own behalf.[3] Van Hout was reluctant to release counsel, but he could not convince counsel that his appellate issues had merit. Van Hout was not satisfied with his options or with counsel's assistance, but he did not want counsel relieved unless he received new counsel. Van Hout conceded that he did not read counsel's motion to withdraw, but claimed that he did not intentionally choose to proceed pro se.

¶ 9. In a March 25, 1997 order, we denied Van Hout's motion to reinstate his appeal rights because he did not meet the deadlines set in our August 8 order granting counsel's motion to withdraw. Van Hout did not show good cause for an extension of the appeal period because he did not show that he was wholly unable to communicate with this court from the time

---

[3] The pending habeas petition does not rely upon Van Hout's claim that his mental condition hindered his ability to communicate with this court. The petition claims that relief is required because Van Hout did not waive an appeal or the assistance of counsel on appeal.

counsel's motion to withdraw was granted (August 1996) until his pro se extension motion (March 1997). The supreme court denied a petition for review of this order.

¶ 10. In April 2000, Van Hout filed a lengthy pro se *Knight* petition alleging that Maroney was ineffective and abandoned him, thereby denying him counsel and an appeal. Van Hout sought reinstatement of his appeal rights. Van Hout claimed that we should have required counsel to file a no-merit report even though Van Hout stated he did not want one, and we should not have permitted Maroney to withdraw until we determined whether Van Hout could proceed pro se and whether he intended to waive his right to counsel on appeal. Van Hout claimed that he was not competent to proceed pro se, and we should have appointed new counsel.

¶ 11. In a May 19, 2000 order, we denied Van Hout's pro se *Knight* petition. We reviewed the history of Van Hout's disagreements with his counsel: counsel explained Van Hout's options to him, we denied Van Hout new counsel and directed Van Hout to decide how to proceed, and we thereafter granted counsel's motion to withdraw, noting that Van Hout had not responded to orders from this court asking him to exercise one of his options. Because Van Hout acted in contravention of his counsel's advice that she file a no-merit report, he could not complain that counsel was ineffective for failing to file the no-merit report. Once counsel withdrew, it was up to Van Hout to pursue an appeal. He did not do so. We denied the pro se habeas petition, and the supreme court denied the petition for review.

¶ 12. We turn to the pending *Knight* petition filed by counsel. In the petition, counsel argues that Van Hout was denied both an appeal and the assistance of

587

counsel on appeal. Van Hout asks for reinstatement of his direct appeal rights because we should not have permitted counsel to withdraw, and Van Hout did not intelligently and voluntarily waive his right to counsel or to an appeal. The petition reiterates that Van Hout never stated that he wanted to proceed pro se, he did not know that counsel had moved to withdraw, and he did not forbid his counsel from filing a no-merit report. The petition also asserts an incongruity between an order of this court that required Maroney to remain of record and a later order that permitted her to withdraw. The petition also contends that if counsel deems an appeal without merit and a defendant declines to close the file, counsel must file a no-merit report. *See Speights v. Frank,* 361 F.3d 962, 964 (7th Cir. 2004), *cert. denied,* 543 U.S. 898 (2004).

¶ 13. In their response, the respondents argue that the habeas petition should be barred on laches grounds, and that the petition lacks merit because Van Hout waived his right to appeal and to counsel. In his reply to the respondents' response, Van Hout disagrees and reiterates that he did not waive his right to a direct appeal or to the assistance of counsel on that appeal.

¶ 14. We will reach the merits of the pending petition, and we focus on whether Van Hout knowingly and intelligently waived his right to counsel. The purpose of a *Knight* petition is to challenge the lawfulness of a defendant's imprisonment based on the denial of effective assistance of counsel on direct appeal. *State v. Evans,* 2004 WI 84, ¶ 39, 273 Wis. 2d 192, 682 N.W.2d 784, *criticized on other grounds by Coleman,* 290 Wis. 2d 352, ¶ 29. We must inquire whether counsel's actions were reasonable under the undisputed facts. *Evans,* 273 Wis. 2d 192, ¶ 52. We evaluate whether

appellate counsel performed deficiently and whether that deficient performance prejudiced Van Hout. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If counsel's deficient performance deprived Van Hout of a direct appeal, prejudice is presumed. *See State ex rel. Flores v. State*, 183 Wis. 2d 587, 620, 516 N.W.2d 362 (1994).

¶ 15. Before we begin our analysis, we summarize the undisputed facts gleaned from the documents before this court. Van Hout was in direct contact with this court and counsel about his disagreements with counsel's representation. Van Hout was advised of his options by this court and counsel and warned about proceeding pro se. Van Hout chose not to open an envelope from counsel containing information about counsel's motion to withdraw and did not respond to the order granting counsel's motion to withdraw. Seven months later, Van Hout filed a pro se motion to extend his appeal period. We denied that motion because Van Hout did not show good cause for an extension or that he was wholly unable to communicate with this court from since the granting of the motion to withdraw on August 8, 1996.

¶ 16. The rules governing waiver of postconviction counsel are set out in *State ex rel. Ford v. Holm*, 2004 WI App 22, ¶ 32, 269 Wis. 2d 810, 676 N.W.2d 500:

> We concluded in [*State v.*] *Thornton*[, 2002 WI App 294, ¶ 21, 259 Wis. 2d 157, 656 N.W.2d 45,] that a knowing and intelligent waiver of postconviction counsel requires a showing that the defendant was aware (1) of the rights discussed in *Flores* ("to an appeal, to the assistance of counsel for the appeal, and to opt for a no-merit report"); (2) of "the dangers and disadvantages of proceeding pro se"; and (3) that if appointed counsel withdraws from representation, successor counsel

589

would not be appointed to represent the defendant in postconviction proceedings.

■

¶ 17. This court's May 17 and June 19, 1996 orders and exchanges with his counsel advised Van Hout of his options, informed Van Hout of his obligations if he proceeded pro se, and warned Van Hout that he would not receive new counsel if he discharged appointed counsel. This is the information required by *Thornton*, 259 Wis. 2d 157, ¶ 21, before a court may conclude that a defendant has knowingly and voluntarily waived the right to counsel on direct appeal.

¶ 18. Van Hout argues that he had no way of knowing what Maroney's envelope contained. That Van Hout did not know the contents of the envelope was a consequence of his decision to refuse delivery of the envelope. Van Hout complains that Maroney did not inform the court that he had refused the envelope until after we granted the motion.[4] We do not find this fact to be significant. Van Hout refused to take delivery of the envelope, and he did not respond to the August 8 order granting the motion to withdraw we sent to him. These are the salient, undisputed facts.

¶ 19. Van Hout states that he did not forbid counsel from filing a no-merit report. This is not true, as the documents filed with the petition make clear. In his June 6, 1996 letter to counsel, Van Hout unambiguously directed counsel not to file a no-merit report.

¶ 20. Van Hout argues that our orders were inconsistent. The May 17 order extended the time to commence postconviction relief and noted that counsel

---

[4] The state public defender received the refused envelope on July 31; Maroney advised us of the refused envelope on August 9.

remained of record. In a June 6 letter to this court, Van Hout told us that he had filed a grievance against Maroney and that if we did not appoint new counsel, he would be forced to act pro se. Our June 19 order acknowledged Van Hout's request for new counsel, but we stated that Van Hout's complaints did not require new counsel, and Maroney would remain counsel of record.

¶ 21.　The posture of the case changed when, on July 29, we received Maroney's motion to withdraw as counsel. As grounds for the motion, Maroney stated that she had given Van Hout his options (proceed pro se or by retained counsel, no-merit report or close the file), and that Van Hout had directed her not to file a no-merit report. Counsel stated her belief that Van Hout wanted to discharge her and advised that she had written to Van Hout asking him to respond to her motion and confirm or dispute whether she should be discharged and whether he would proceed pro se. In an August 8 order, we granted counsel's motion to withdraw, noting that Van Hout had not responded to the motion. We stated that Van Hout had not given counsel direction on how to proceed and had directed her not to file a no-merit report. We concluded that by his failure to object to the motion to withdraw, "Van Hout concedes that he wishes counsel to withdraw and that he will proceed pro se." Van Hout admitted in a March 19, 1997 filing in this court that he refused counsel's envelope. The orders are not inconsistent; rather, they reflect the progress of the disagreement between attorney and client.

¶ 22.　Van Hout contends that our June 19, 1996 order required Maroney to remain as counsel of record and did not require Van Hout to contact this court about the status of his representation. None of this

591

matters because counsel subsequently moved to withdraw. With that motion, circumstances changed, and Van Hout was obligated to respond in some fashion to that motion or to the order granting the motion. The motion to withdraw recited grounds which Van Hout could have disputed if he had taken delivery of the envelope and opened it, or if he had responded to this court's order granting the motion to withdraw. Van Hout repeatedly seeks to evade the consequences of his failure to open the envelope or respond to the order granting the motion to withdraw.

¶ 23. Where a defendant has specifically directed counsel not to file a no-merit report after being advised of his or her options, counsel is not free to ignore the defendant's direction. We discussed the nature of the attorney-client relationship in *State v. Divanovic*, 200 Wis. 2d 210, 224–25, 546 N.W.2d 501 (Ct. App. 1996) (citations and footnotes omitted):

> Supreme Court Rule 20:1.2 (West 1996) entitled "Scope of Representation," recites, in part, that "A lawyer shall abide by a client's decisions concerning the objectives of representation." However, the comment that follows provides that such limits on the objectives of representation must follow consultation between the lawyer and the client. SCR 20:1.2 cmt. This consultation requirement was followed in this case as our discussion on the previous issue demonstrates. Thus, [counsel] was ethically bound to abide by Divanovic's instructions.
>
> The case law is in accord. The attorney-client relationship is one of agent to principal, and as an agent, the attorney must act in conformity with his or her authority and instructions and is responsible to the principal if he or she violates this duty. A defendant who insists on making a decision which is his or hers alone to make

592

> in a manner contrary to the advice given by the attorney cannot subsequently complain that the attorney was ineffective for complying with the ethical obligation to follow his or her undelegated decision.[5]

The record in this matter reveals that Van Hout and Maroney consulted about his postconviction options, and Van Hout exercised his right to decline a no-merit report. Under *Divanovic*, Maroney was not free to ignore Van Hout's wishes, and she properly put the issue before this court via a motion to withdraw.

¶ 24. We do not think that we place too much emphasis on Van Hout's directive not to file a no-merit report, his failure to open the envelope containing counsel's motion to withdraw, and his failure to respond to the August 8 order granting Maroney's motion to withdraw. A defendant who has been informed of his or her options by counsel bears the burden to exercise one of those options and so inform counsel. *Flores*, 183 Wis. 2d at 617–19. A defendant cannot remain mute in the face of a request from counsel for direction or when his or her rights to appeal and to counsel are at stake. *See id.* at 619. A defendant must accept responsibility for remaining mute, particularly when that defendant has not exhibited any prior difficulty making his views known to counsel and the court.

¶ 25. We conclude that under the undisputed facts, counsel acted reasonably and did not perform deficiently in moving to withdraw. Counsel had deemed an appeal without arguable merit, but Van Hout directed her not to file a no-merit report. Van Hout did not consent to closing the file, and he did not rescind his

---

[5] Supreme Court Rule 20:1.2 has not changed.

direction to counsel not to file a no-merit report. Under these circumstances, counsel properly moved to withdraw.[6]

¶ 26. We have considered whether federal cases require us to reinstate Van Hout's appeal rights. In *Betts v. Litscher*, 241 F.3d 594 (7th Cir. 2001), counsel determined that an appeal would lack merit; Betts disagreed. *Id.* at 595. Instead of filing a no-merit report, the state public defender advised this court that Betts had declined a no-merit report and had elected to proceed pro se. *Id.* Counsel closed the file without moving to withdraw or filing a no-merit report. *See id.* Thereafter, Betts tried to obtain counsel and exercise his appeal rights. *Id.* at 596. We concluded that he had waived his right to counsel. *Id.*

¶ 27. The Seventh Circuit disagreed and concluded that Betts did not waive his right to counsel and that counsel's statements to the court that Betts declined a no-merit report and intended to proceed pro se were insufficient to constitute a waiver or to permit a conclusion that Betts was aware of the court review which occurs in a no-merit appeal. *Id.* The court found that the state public defender never demonstrated that

---

[6] WISCONSIN STAT. RULE 809.32(1)(a) (2003–04) states: "If an attorney appointed under s. 809.30(2)(e) or ch. 977 concludes that a direct appeal on behalf of the person would be frivolous and without any arguable merit within the meaning of *Anders v. California*, 386 U.S. 738 (1967), and the person requests that a no-merit report be filed or declines to consent to have the attorney close the file without further representation by the attorney, the attorney shall file with the court of appeals 3 copies of a no-merit report." This rule was not in effect in 1996 when Van Hout's dispute with appointed counsel arose. Therefore, it is not necessary for us to discuss the current rule in the context of this habeas petition.

Betts was informed of his appellate options, and therefore Betts could not be found to have waived counsel. *Id.* The court held that in such circumstances, counsel should have filed a no-merit report in lieu of closing the file. *Id.* at 597. The court reinstated Betts' appeal rights because he was deprived of an appeal. *Id.*

¶ 28. In *Jones v. Berge*, 246 F. Supp. 2d 1045 (E.D. Wis. 2003), the district court reinstated defendant's appeal rights because he was forced to proceed pro se despite stating that he did not want to do so. Jones disagreed with counsel's decision to file a no-merit report; counsel closed the file. *Id.* at 1047–48. The state public defender declined to appoint new counsel. *Id.* at 1048. We then told Jones that he could allow former counsel to resume the representation and file a no-merit report, proceed pro se or waive an appeal. *Id.* Jones responded that he had meritorious issues, did not want a no-merit report and did not want to proceed pro se. *Id.* We declined to appoint counsel, and Jones was left to proceed pro se. *Id.* Jones pursued his appeal pro se, but lost. *Id.*

¶ 29. Jones sought relief in this court on the grounds that his appointed counsel was ineffective. *Id.* at 1049. We held that Jones elected to proceed pro se, waived a no-merit report and could not complain that he lacked counsel on appeal. *Id.* The district court ruled that we never found that Jones waived his right to counsel on appeal, and that we could not equate rejection of the attorney with the waiver of the right to counsel. *See id.* at 1057–59.

¶ 30. We distinguish *Betts* and *Jones* because here, Maroney moved to withdraw as counsel, thereby involving the court and giving Van Hout an opportunity to respond to the motion. He did not do so. Unlike *Betts*, the record in this matter reveals that Van Hout was

advised of his options and the no-merit procedure. Van Hout declined to continue participating in the process of determining whether he would have counsel and what action counsel would take. Van Hout did not respond to our June 19 order declining his request for new counsel, refused to open the envelope containing counsel's motion to withdraw, did not object to our order granting counsel's motion to withdraw, and never exercised the options repeatedly given to him.

¶ 31. We do not read *Betts* and *Jones* to preclude counsel from moving to withdraw under the circumstances presented here. Counsel's motion to withdraw in response to a direction not to file a no-merit report involves the court in confirming that a defendant has received the required information and warnings and gives the defendant an opportunity to address the question of representation on appeal.

¶ 32. Van Hout relies upon *Speights* for the proposition that if counsel deems an appeal without merit and the defendant declines to close the file, counsel must file a no-merit report. *Speights*, 361 F.3d at 964. In *Speights*, appointed counsel advised Speights that she intended to file a no-merit report. *Id.* at 963. Speights then asked counsel to withdraw from the case so that he could proceed pro se or retain counsel. *Id.* Counsel withdrew, and Speights proceeded pro se. *Id.* Thereafter, Speights claimed that he had been denied the assistance of counsel. *Id.* at 964. The Seventh Circuit held that counsel had secured Speights' consent to withdraw from the representation and that Speights was aware of his options. *Id.*

¶ 33. Van Hout's reliance upon *Speights* overlooks a key fact present here but not present in *Speights*. Van Hout specifically forbade counsel from filing a no-merit report. In fact, Van Hout made this demand after we

issued our May 17, 1996 order in which we laid out the no-merit procedure. Van Hout knew of this court's role in the no-merit procedure at the time he declined a no-merit report, knowledge required by *Betts*. *See Betts*, 241 F.3d at 596.

¶ 34. A defendant can waive the right to counsel by conduct. *State v. Coleman*, 2002 WI App 100, ¶ 16, 253 Wis. 2d 693, 644 N.W.2d 283. The right to counsel can be forfeited if a defendant's conduct frustrates the orderly and efficient progression of the case. *Id.*, ¶ 17. Van Hout was told he would not receive new counsel and he was advised of his options (proceed pro se or by retained counsel, no-merit report, or close the file). Had Van Hout responded to counsel's motion to withdraw, he could have compelled counsel to file a no-merit report.[7] Van Hout's correspondence with this court and counsel reveals a defendant who did not continue his engagement with the court and counsel about postconviction relief and representation and who, by his conduct, forfeited his right to counsel.

¶ 35. We hold that the undisputed facts show that by his conduct, Van Hout knowingly and intelligently waived his right to counsel after receiving the required information and warnings. Thereafter, Van Hout proceeded pro se, and he permitted his appeal rights to lapse by not acting within the time limits set by this court. The petition for a writ of habeas corpus is denied.

¶ 36. We realize that this decision leaves Van Hout without an appeal. We understand and support the idea that every convicted defendant should have the right to an appeal. But we are nonetheless confident that a defendant, by actions designed to obfuscate and

---

[7] New counsel has already been denied.

frustrate the judicial review process, can give up that right. Criminal defendants often disagree with appointed counsel's decision to file a no-merit report precisely because they believe that, for whatever reason, they have a right to more from their appointed counsel. They do not.

¶ 37. If a defendant does not want a no-merit report, the defendant has three choices: fire counsel and proceed pro se, fire counsel and hire private counsel if financially feasible, or direct that the file be closed. But a defendant cannot simply insist that appointed counsel pursue an advocacy appeal under Wis. Stat. Rule 809.30 despite counsel's view that such an appeal would lack arguable merit. *Jones v. Barnes*, 463 U.S. 745, 751–53 (1983) (counsel must exercise professional judgment in the manner in which he or she represents the defendant). And, a defendant cannot alternatively insist on different appointed counsel who will write a brief the way the defendant wants it written. Finally, a defendant cannot forbid appointed counsel from filing a no-merit report and then claim that counsel has abandoned him or her when counsel moves to withdraw from the representation. We will not allow a defendant to play games in order to get something that the defendant is not entitled to have or to engage in an endless go-round with this court over the course of postconviction proceedings. That is what is going on here, and we will not play that game.

*By the Court.*—Writ denied.