# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2646

JAEL K. SPEIGHTS,

*Petitioner-Appellant,*

v.

MATTHEW J. FRANK, Secretary, Wisconsin
Department of Corrections,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-0057-C—**Barbara B. Crabb**, *Chief Judge*.

———————

SUBMITTED MARCH 4, 2004—DECIDED MARCH 19, 2004

———————

Before EASTERBROOK, MANION, and EVANS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Jael Speights was convicted in a Wisconsin court of burglary and sexual assault. Susan Alesia, who had been assigned to represent him on appeal, concluded that no non-frivolous argument was available and told Speights that she planned to file a no-merit report, following Wisconsin's procedure for criminal defense lawyers to accommodate their obligation to be zealous advocates with their obligation to avoid frivolous litigation. See *McCoy v. Court of Appeals*, 486 U.S. 429

(1988). Cf. *Anders v. California*, 386 U.S. 738 (1967). Speights insisted that counsel prosecute the appeal without a no-merit report; she declined and sent him an "Appellate Decision Form" giving Speights three options in check-the-box fashion:

> (1) I want Attorney Alesia to close my file without taking any action.

> (2) I want Attorney Alesia to file a No Merit Report.

> (3) I want to [sic] Attorney Alesia to withdraw from my case so that I can represent myself or I can pay for another attorney to represent me. I understand that the Public Defender's Office will not appoint another attorney to represent me.

Alesia's letter acknowledged knowing that Speights did not like any of the options but added that she was unwilling nonetheless to file a regular brief on the merits. Speights did not respond promptly, and Alesia wrote him another letter, this time telling him:

> It is my understanding that our office is not going to appoint another attorney to represent you. I discussed this situation with my supervisors and I have concluded that because you are not willing to make a decision . . . my only option is to file the No Merit Notice of Appeal. This is the document that informs the court that I will be filing a No Merit Report.

That letter induced Speights to act; he returned the Appellate Decision Form with an "X" next to the third option. Alesia then withdrew as his lawyer and asked the court for a 60-day extension of time so that Speights could file his own brief. In the following months Speights received another extension of the deadline and twice requested but was denied appointment of new counsel. He never filed a brief, though, and eventually the court dismissed his appeal for lack of prosecution. Speights then sought collateral review in both state and federal court, arguing that he had

been denied the assistance of counsel. The state judiciary, and the federal district judge, denied his petitions, ruling that Speights had waived any entitlement to appellate counsel by selecting the third option on the Appellate Decision Form.

Wisconsin's judiciary concluded that Speights had selected the third option in order to block Alesia from explaining to the appellate court why she had concluded that the appeal was untenable. Speights does not deny that this was his actual motivation (and in any event the state's findings on that factual issue would be hard to upset, see 28 U.S.C. §2254(e)) but contends that the state was not entitled to put him to the choice. This line of argument boils down to disagreement with *McCoy*, which held that Wisconsin may require a lawyer who believes that an appeal would be frivolous to explain the weaknesses of any potential appellate arguments. Wisconsin's procedure may lead some defendants to think it better to represent themselves than to allow counsel to arm the court with reasons why they should lose. Once *McCoy* sustained Wisconsin's approach, however, persons in Speights's position cannot claim a constitutional entitlement to avoid making that decision, even though from their perspective it amounts to a choice among evils. Defendants may have an unconditional right to counsel on appeal, but they do *not* have a right to counsel who pretend that frivolous arguments actually are meritorious. The choice to which the Appellate Decision Form puts a defendant may be hard, but it is also lawful. Unlike the situation in *Betts v. Litscher*, 241 F.3d 594 (7th Cir. 2001), which held that counsel may not abandon a client who opposes the filing of a no-merit report, attorney Alesia secured her client's unequivocal consent. She made it plain that, in the absence of Speights's agreement, she would file a no-merit report, as *McCoy*, *Anders*, and *Betts* require; Speights replied that he preferred to go it alone.

That leaves Speights's contention that Alesia did not warn him about the dangers of self-representation—or at

least give him more information about how the no-merit procedure works—and that this omission entitles him to a new lawyer and a new appeal within the state system. He derives this "right to be warned and informed" from the requirement that waivers of counsel be knowing and intelligent. See *Johnson v. Zerbst*, 304 U.S. 458 (1938); *Faretta v. California*, 422 U.S. 806, 835 (1975). The requirement of voluntariness does not itself require explanations and advice about the risks and benefits of each choice; if it did, *Miranda* warnings would be woefully inadequate (for they do not tell the suspect what counsel could do for him or what risks an uncounseled interrogation poses) and consents to search could not be made without the sort of advice that *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), held to be unnecessary. See also *Ohio v. Robinette*, 519 U.S. 33 (1996). What one can say is that waiver of the right to the assistance of counsel *at trial*, the stage of a criminal prosecution most difficult for a layperson to navigate, may require an oral inquiry to ensure that the defendant chooses with knowledge of his entitlements and his eyes open to the dangers of self-representation. See *Iowa v. Tovar*, No. 02-1541 (U.S. Mar. 8, 2004), slip op. 9-10; *United States v. Hill*, 252 F.3d 919, 928 (7th Cir. 2001). The Supreme Court has never held that waivers of counsel at any stage of the proceedings other than trial require such a give-and-take between the accused and someone trying to educate him about counsel's benefits— and in *Tovar* the Court held that the Constitution does not require warnings along these lines when the accused wants to plead guilty without legal assistance. It is enough, *Tovar* held, if the accused knows of his right to counsel and the plea itself is voluntary.

Much the same may be said about waivers of legal assistance in prosecuting an appeal. Once the trial is over, the major complexities, choices, and risks are past. That is one reason why, the Court held in *Martinez v. Court of Appeal*, 528 U.S. 152 (2000), the defendant no longer has

an unqualified right to act as his own lawyer. When a state allows defendants to represent themselves on appeal, however, it may permit them to decide without the rigmarole that attends waiver of counsel for trial. Just as a simple consent to proceed without counsel suffices during custodial interrogation, so a straightforward assent is enough on appeal. So, at least, a state may think without contradicting any decision of the Supreme Court or acting unreasonably—and, unless the state judiciary does one or the other, collateral relief is unavailable. 28 U.S.C. §2254(d). *Tovar* strongly implies that the Supreme Court is not likely to extend, beyond the trial itself, any requirement that a defendant be informed about the benefits of counsel and risks of waiver. See also *Patterson v. Illinois*, 487 U.S. 285, 298-99 (1988). If such an extension (or a requirement that counsel explain the no-merit procedure clearly enough for a client to grasp) to occur nonetheless, that must happen on direct review; given §2254(d) a collateral attack is not the occasion for the development of new constitutional rules.

Speights, who bears the burden of persuasion on collateral attack, see *Tovar*, slip op. 13-14, does not contend that he misunderstood the choices offered. He is literate in English and not afflicted by any mental disease. Appointed counsel made it clear that, if Speights so requested (or even if he did nothing), she would proceed with a no-merit report, satisfying her obligations under *McCoy*. Armed with this knowledge, Speights dismissed his lawyer, prevented the filing of the no-merit report, and undertook to represent himself. He bungled the job. Wisconsin is not obliged by the Constitution to give him a second bite at the apple.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*