In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2302

JAMES A. SMITH,

*Petitioner-Appellant,*

*v.*

GREGORY GRAMS, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 C 375—**John C. Shabaz**, *Judge.*

ARGUED DECEMBER 5, 2008—DECIDED MAY 15, 2009

Before RIPPLE, KANNE, and TINDER, *Circuit Judges*.

KANNE, *Circuit Judge*. Appellant James Smith is currently serving a fifteen-year sentence for a 1994 armed robbery conviction in the circuit court of Milwaukee County, Wisconsin. In 2007, Smith petitioned the United States District Court for the Western District of Wisconsin for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Smith claimed, *inter alia*, that he was denied his Sixth Amendment right to counsel during his state jury trial. The district court

dismissed the petition. We find merit in Smith's claims and remand to the district court with orders to issue the writ.

## I. BACKGROUND

Smith was arrested in early 1994 on a charge of armed robbery. Following his arrest, Wisconsin's Office of the State Public Defender appointed Smith's first counsel, Assistant Public Defender Steven Sargent. At a status hearing held March 23, 1994, Sargent informed the court that Smith desired a new attorney. Smith, who was present at the hearing, told the court that he was not interested in another lawyer from the Public Defender's office. Smith said that he wanted the Public Defender to appoint Thomas Marola, an attorney in private practice, to handle his case. Marola had defended Smith at a recent trial in which a jury acquitted Smith of both sexual assault and armed robbery.

If the Public Defender's office would not appoint Marola, Smith insisted that he would represent himself. The court conducted a cursory examination of Smith, inquiring about his education and experience with the judicial system. The court then concluded the hearing, leaving both representation options open: "[W]e can work it out with the Public Defender's office, however they want to do it. You can represent yourself, or they'll appoint a lawyer for you." At the March 23 hearing, Smith also reiterated a previous request for a speedy trial.

A week later, on March 31, 1994, the court held a status hearing in Smith's absence at which Thomas

Wilmouth, Smith's second appointed counsel, entered his appearance. The court set the trial date for May 25, 1994, which it later changed to May 31.

The next status hearing occurred on May 4, 1994, with both Smith and Wilmouth present. At that hearing, Wilmouth moved to withdraw as Smith's attorney, a sentiment echoed by Smith, who also requested new representation. Wilmouth said that he had spoken with the Wisconsin Public Defender's office and "they indicated at this point that they have a mind [to appoint a third lawyer]." The court granted the motion. The court then allowed Smith to be heard *pro se* on a motion related to his bond, but it continued to indicate its expectation that Smith would be represented by counsel at trial: "I'll grant the motion Mr. Wilmouth on the condition . . . that a new attorney should be appointed as quickly as possible. . . . [W]e can see who the new lawyer is and when he'll be ready to go [to] trial."

The court held its final pretrial hearing on May 10, 1994. Smith appeared without counsel, and the court informed him that the Public Defender's office had refused to appoint a third attorney. Smith claimed this was the first he had heard of this development, but a letter to this effect was apparently sent to Wilmouth, his former lawyer. Smith reiterated his desire for legal counsel. After more discussion, Smith inquired about his options, to which the court responded, "Well, . . . you can represent yourself." Smith reminded the court that at the May 4 hearing, Wilmouth had said that the Public Defender's office would appoint Smith another lawyer.

Later in the hearing, the court conducted another brief examination of Smith, asking essentially the same questions that it had at the March 23 hearing. The court learned that Smith had graduated from high school and received some vocational training. Smith also informed the court that he had been through at least one criminal trial, the aforementioned proceeding during which Attorney Marola had represented him. Smith noted that he had required the help of other inmates to prepare various motions in the present case. Near the end of the hearing, Smith again expressed his desire for representation, saying, "I would like an attorney, but if I can't hire one, I guess I will be representing myself."

The first day of Smith's trial came on May 31, 1994. From the beginning, Smith made it clear that he wished to be represented by counsel. After the court called the case, Smith immediately said, "The Court can appoint me an attorney." The court declined Smith's request and gave Smith an option. He could waive his right to a speedy trial—a demand Smith had made on March 14 and renewed during his March 23 hearing—and adjourn that day's proceedings, or he could continue in a *pro se* fashion. Smith declined to waive his speedy trial right, and the court said, "Okay, we'll go to trial."

Smith continued to assert his desire for counsel in the minutes preceding voir dire, saying: "I don't think it's right. I asked for an attorney before, the Court ignored me . . . . No way I can defend myself because I don't know anything about the law."

Immediately prior to opening statements, Smith made a motion to dismiss based on the denial of his right to

counsel. In support of his motion, Smith said the following: "The defendant can't possibly defend hisself [sic] in a court of law. . . . Defendant is unable to employ counsel and is unable and incapable of making his own defense because of ignorance, feeblemindedness, illiteracy, or the lack thereof." Despite Smith's protestations, the court conducted the trial with Smith acting *pro se*.

On June 3, the jury found Smith guilty of armed robbery in violation of Wis. Stat. § 943.32(1)(a)-(2). Six weeks later, on July 14, the court sentenced Smith to fifteen years in prison. In the years since, Smith has traveled a long and twisted road through the Wisconsin court system, the details of which are largely irrelevant to the present appeal.[1]

In a decision dated August 29, 2006, the Wisconsin Court of Appeals denied Smith's direct appeal. The court recounted Smith's inconsistent behavior during the series of hearings we discussed above, where Smith sometimes requested appointed counsel and at other times asserted his right to defend himself. The court highlighted the

---

[1] The Wisconsin Court of Appeals denied Smith's first direct appeal on May 29, 1996. Seven years later, however, the Wisconsin Court of Appeals reinstated Smith's direct appeal rights after it concluded that during Smith's 1996 appeal, which Smith had filed *pro se*, Smith had not knowingly and voluntarily waived his right to postconviction/appellate counsel. As we will discuss, in 2006, the Wisconsin Court of Appeals issued a decision on Smith's renewed appeal that now becomes the basis for our review of Smith's habeas corpus petition.

choice presented to Smith by the trial court—either waive his right to trial counsel and proceed *pro se* or waive his right to a speedy trial and adjourn the proceedings—and Smith's decision to proceed with the trial. The result, said the court, was that Smith, "by asserting mutually exclusive constitutional rights (one of which was clearly more important to him than the other), . . . waived his right to counsel by operation of law." The court summarized its conclusions as follows: "By knowingly choosing the frequently inconsistent courses of action he did (by repeatedly requesting to discharge counsel and appoint successor counsel at the eleventh hour, by seeking to proceed *pro se*, and by refusing to waive his speedy trial demand), Smith essentially elected to defend himself at his jury trial."

Smith's journey has now crossed over into the federal court system, where he filed a petition in the United States District Court for the Western District of Wisconsin seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. In the portion of his petition at issue in this appeal, Smith argued that he was denied his Sixth Amendment right to counsel at trial and was therefore being held in violation of the United States Constitution.

In an order issued on March 28, 2007, the district court dismissed the petition after concluding that the Wisconsin Court of Appeals did not base its decision on an unreasonable determination of the facts or an unreasonable application of United States law. This appeal follows from that order.

## II. ANALYSIS

We are presented with two issues. First, the State contests the time and manner in which Smith filed his notice of appeal and claims that we are left without jurisdiction. Second, if we have jurisdiction, we must decide, under our deferential standard of review, whether Smith was denied his right to counsel at trial.

### A. This Court's Jurisdiction on Appeal

The first issue that we must address is whether we possess jurisdiction to hear this appeal. The State contends that Smith did not appeal the district court's order of March 28, 2007, in a timely manner. For the following reasons, we disagree and conclude that we have jurisdiction.

The Federal Rules of Appellate Procedure dictate that a party wishing to appeal an adverse judgment or order must file a notice of appeal with the clerk of the district court within thirty days of the entry of the contested judgment or order. Fed. R. App. P. 4(a)(1)(A). Smith made three filings in 2007 that are potentially relevant to our analysis, one on each of the following dates: April 2, April 20, and June 4. Neither Smith nor the State disputes that the notice of appeal filed by Smith on June 4, 2007, was untimely. If that were Smith's only filing, we would have no choice but to dismiss the case for lack of jurisdiction. *See Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 994 (7th Cir. 2000) ("[T]he timely filing of a notice of appeal is both mandatory and jurisdictional,

and a notice filed too late will preclude appellate juris-
diction." (quotations omitted)); *United States ex rel. Burton
v. Greer*, 643 F.2d 466, 469 (7th Cir. 1981). Smith's two
additional filings, however, both came within Rule 4's
thirty-day window, and Smith now contends that one
or both of these served as notices of his appeal, a position
the Wisconsin Attorney General contests.

Acting *pro se*, Smith made the first of these filings
with the Western District of Wisconsin on April 2, 2007. In
his letter, Smith sought to appeal the district court's
March 28 order directly to the Supreme Court of the United
States. In support, Smith cited Supreme Court Rule 18,
which governs the appropriate procedure "[w]hen a
direct appeal from a decision of a United States district
court is authorized by law." Sup. Ct. R. 18(1). In a letter
dated May 15, 2007, the Supreme Court returned the
notice of appeal to the district court, stating that direct
appeal of a district court order is permitted only when
issued by a three-judge district court panel. *See* 28 U.S.C.
§ 1253. It was after receiving the Supreme Court's
response that Smith filed his untimely notice of appeal to
this court on June 4, 2007.

In the interim period between filing his notice of
appeal to the Supreme Court and receiving the Court's
response, Smith, again acting *pro se*, made a second
filing. He filed a document, captioned "Circuit Rule 52
Certification of Question of State Law," with our court
on April 20, 2007. This submission, spanning thirty-five
handwritten pages, appears to detail every perceived
wrong he endured in the then-thirteen years since the
date of the armed robbery.

The question we must answer is one with which we are familiar, particularly when confronted with a *pro se* party: whether either of the filings made within the thirty-day deadline is sufficient to serve as a valid notice of appeal. Generally, a notice of appeal must (1) contain the name of the party or parties taking the appeal; (2) designate the judgment or order, or part thereof, being appealed; and (3) name the court to which the appeal is being taken. Fed. R. App. P. 3(c)(1).

When a party proceeds *pro se*, however, we will, if possible, liberally construe his actions to find Rule 3's requirements satisfied. *Smith v. Barry*, 502 U.S. 244, 248 (1992); *see, e.g.*, *Listenbee v. City of Milwaukee*, 976 F.2d 348, 350-51 (7th Cir. 1992) (recognizing a party's motion for an extension of time to file a notice of appeal as the necessary notice of appeal); *Scherer v. Kelley*, 584 F.2d 170, 174 (7th Cir. 1978) (noting that *pro se* notices of appeal "are entitled to a liberal construction where the intent of the appellant is apparent and the adverse party is not prejudiced"). Our obligation to construe liberally Rule 3's dictates, however, does not excuse true noncompliance, which remains fatal to any appeal. *Barry*, 502 U.S. at 248.

In *Barry*, 502 U.S. 244, the Supreme Court held that a *pro se* party's appellate brief functioned as his notice of appeal. The Court stated that when a filing is " 'technically at variance' " with Rule 3's requirements, a court should construe the filing as a valid notice of appeal if it is the " 'functional equivalent of what the rule requires.' " *Id.* at 248 (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988)). The Court then focused its discussion on

the purpose of Rule 3, which it said was to provide "sufficient notice to other parties and the courts." *Id*.; *see also Torres*, 487 U.S. at 318; *United States v. Musa*, 946 F.2d 1297, 1301 (7th Cir. 1991). The Court said that "[i]f a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." *Barry*, 502 U.S. at 248-49.

With these general principles in mind, we turn first to Smith's April 2 filing with the district court, in which he sought direct review by the Supreme Court of the district court's March 28 order. This filing contained both the name of the party taking the appeal and designated the order being appealed, thus satisfying Rule 3(c)'s first two requirements. *See* Fed. R. App. P. 3(c)(1)(A)-(B). The only variance from Rule 3 was in the name of the court to which the appeal was being taken. *See id.* 3(c)(1)(C). Instead of seeking appeal to this court as he should have, Smith sought to appeal directly to the Supreme Court. This was a non-fatal error.

When a party may appeal only to a certain court, we have recognized the validity of a notice of appeal that contains no mention whatsoever of the court to which the case is being taken; we infer that the party intended to appeal to the only available forum. *See Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1125 (7th Cir. 1996).[2] Here, as in

---

[2] In *Ortiz*, we noted that certain situations would prevent the application of this general rule, 94 F.3d at 1125, and one such situation is where a direct appeal to the Supreme Court is

(continued...)

*Ortiz*, Smith had only one available appellate forum. The fact that he did not understand this constraint, as evidenced by his erroneous attempt to appeal to the Supreme Court, is of little consequence.

Further, we have held that a notice of appeal was valid even when, as here, it designated the wrong court for appeal. *See Musa*, 946 F.2d at 1301. In *Musa*, the appellant, acting with the assistance of counsel, filed a timely notice of appeal, but incorrectly designated as the appellate court the United States Court of Appeals for the Eighth Circuit. *Id.* We found that this flaw did not prevent the notice of appeal from fairly notifying both the opposing party and district court of the appellant's intent to appeal, and we held that the notice of appeal was therefore sufficient. *Id.*

The State attempts to distinguish the two cases. It argues that, unlike in *Ortiz*, Smith's intent to seek review in the Supreme Court was obvious, making it unnecessary to infer the court to which Smith intended to appeal. And unlike in *Musa*, the State contends, Smith made no mistake in deciding the court to which he appealed; he intentionally attempted to bypass this court, thus rendering his notice of appeal invalid.

---

[2] (...continued)
available under 28 U.S.C. § 1253, *Musa*, 946 F.2d at 1301. Despite the invocation of § 1253 in the Supreme Court's response to Smith's attempted appeal, however, such a case is not now before us. Smith's misguided effort to appeal to the Supreme Court does not change the fact that this court was then, and is now, the only court to which he could appeal.

The State's arguments, which hinge largely on Smith's subjective intentions, are unconvincing. In *Barry*, the Supreme Court, when discussing whether the petitioner's appellate brief was the functional equivalent of a notice of appeal, downplayed the petitioner's intentions: "[T]he notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal." 502 U.S. at 248. We find the Court's sentiments applicable in this case as well, and we decline to delve into Smith's subjective intentions when he filed his April 2 notice of appeal to the Supreme Court. In *Musa*, we excused a mistaken appeal to the Eighth Circuit, even though that mistake was made by a practicing attorney, not a *pro se* party. 946 F.2d at 1301. It would be incongruous not to provide at least that same level of deference to a party acting without the benefit of counsel.

As the Court instructed in *Barry*, we return to the purpose of a notice of appeal, which is to provide fair notice to both the opposing party and the district court. 502 U.S. at 248; *see also Musa*, 946 F.2d at 1301. Smith unquestionably provided adequate notice in this case. That Smith wished to appeal the district court's order was apparent. Equally as apparent to a party well-versed in the law, such as the Wisconsin Attorney General, is that this appeal had to be taken in the only court in which such an appeal could stand—the United States Court of Appeals for the Seventh Circuit. As a result, the State cannot claim to have been prejudiced in any regard. Given the liberal construction that we generally owe a *pro se* party's filings, we hold, as we did in *Ortiz* and *Musa*, that

Smith's attempted appeal to the Supreme Court, timely filed with the district court, was the "functional equivalent" of a proper notice of appeal. It is therefore unnecessary for us to consider whether Smith's second filing would have also served as a functional notice of appeal under Rule 3. Having determined that we have jurisdiction to hear this appeal, we now turn to the merits of Smith's petition.

## B. Smith's Sixth Amendment Right to Trial Counsel

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), we may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In conducting this deferential evaluation, we presume that the state court's factual determinations are correct, a presumption the petitioner may rebut only by clear and convincing evidence. *Id.* § 2254(e)(1). As the petitioner, Smith bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable. *See Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Sturgeon v. Chandler*, 552 F.3d 604, 609 (7th Cir. 2009). We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Sturgeon*, 552 F.3d at 609.

The Sixth Amendment of the United States Constitution guarantees a party engaged in a criminal prosecution the assistance of counsel. U.S. Const. amend. VI. The Due Process Clause of the Fourteenth Amendment incorporated this right, making it applicable to state criminal prosecutions as well. *See* U.S. Const. amend. XIV, § 1; *Danforth v. Minnesota*, 128 S. Ct. 1029, 1035 (2008) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)).

Although the Constitution provides the right to the assistance of counsel, it does not permit a state to force unwanted counsel upon a party. *See Faretta v. California*, 422 U.S. 806, 820 (1975) ("To thrust counsel upon the accused, against his considered wish, thus violates the logic of the [Sixth] Amendment."). Instead, the Supreme Court has interpreted the Sixth Amendment as containing an implied right to waive counsel and represent oneself. *See id.* at 821. To be valid, a defendant's waiver of the right to counsel must be made knowingly and intelligently. *Id.* at 835; *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Notwithstanding the right to represent oneself, however, courts have continued to recognize the overwhelming advantages that an accused gains from a lawyer's guidance. *See, e.g.*, *Faretta*, 422 U.S. at 834 ("It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."); *United States v. Moya-Gomez*, 860 F.2d 706, 732 (7th Cir. 1988) (suggesting that a court inform a defendant "that it would be unwise not to

accept the assistance of counsel").[3] For this reason, courts are hesitant to find a waiver of the right to counsel and "will indulg[e] every reasonable presumption against the waiver." *United States v. Belanger*, 936 F.2d 916, 919 (7th Cir. 1991) (alteration in original) (quotations omitted); *see also Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948) (Black, J., plurality opinion) (noting "the strong presumption against waiver of the constitutional right to counsel" and "the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused"); *Johnson*, 304 U.S. at 464 ("[W]e do not presume acquiescence in the loss of fundamental rights." (quotations omitted)). This is particularly true when evaluating waiver of trial counsel, which is even more fiercely protected than the right to counsel at other stages of a criminal proceeding. *Patterson v. Illinois*, 487 U.S. 285, 298 (1988) (comparing counsel's role at various stages in criminal prosecutions and commenting on "the enormous importance and role that an attorney plays at a criminal trial").

The Wisconsin Court of Appeals's opinion identified two separate grounds in support of its conclusion that Smith waived his right to trial counsel. First were Smith's "inconsistent courses of action," in which Smith

---

[3] *See also Powell v. Alabama*, 287 U.S. 45, 69 (1932) ("Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step . . . . Without it, though he be not guilty, he faces the danger of conviction . . . .").

vacillated between utilizing appointed counsel and representing himself. The second ground was Smith's refusal, on the day of his trial, to adjourn proceedings, notwithstanding his continued pleas for appointed assistance. On appeal, Smith contends that this decision by the Wisconsin Court of Appeals was both an unreasonable application of clearly established federal law and an unreasonable determination of facts. Upon review, we agree and find that habeas relief is warranted.

In certain circumstances, a defendant may waive his right to counsel through not only his words, but also his conduct. *United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002); *see, e.g., United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001); *United States v. Irorere*, 228 F.3d 816, 826 (7th Cir. 2000). This case is distinguishable from those in which we have found such waiver, however. In *Traeger*, for example, the trial court, at the time it permitted the defendant to fire his lawyer, warned the defendant that he would have to proceed *pro se* because the court would not appoint him another attorney. 289 F.3d at 475. The defendants received similar warnings in both *Oreye*, 263 F.3d at 670, and *Irorere*, 228 F.3d at 827-28. Unlike in those cases, the Wisconsin trial court provided no such warnings to Smith. In fact, at the time the court permitted Smith to relieve his second attorney, it made clear that it expected Smith to be represented by a new attorney within a week.[4]

---

[4] During the March 23 hearing at which Attorney Sargent

(continued...)

The Public Defender's office provided Smith with two lawyers, both of whom Smith terminated. But at the time Smith rejected the second, Attorney Wilmouth, he did so under the impression that he would be appointed new counsel. At Smith's May 4 hearing, Wilmouth, addressing the court in Smith's presence, said that he had spoken with the Public Defender's office, which had indicated its intentions to appoint a third attorney to represent Smith.

The court, in fact, made its decision to grant Wilmouth's withdrawal contingent on another appointment: **"I'll grant the motion Mr. Wilmouth on the condition . . . that a new attorney should be appointed as quickly as possible."** The court then set another status hearing for the following week, **"so we can see who the new lawyer is and when he'll be ready to go to trial."**

It was not until a week later, at the May 10 hearing, that Smith learned that the Public Defender would not provide him another lawyer. When Smith asked about his options, the court provided only one: self-representation. Smith reiterated throughout the May 10 hearing his desire for counsel, a request that he reasserted on the day of his trial, all to no avail. The court concluded that

---

[4] (...continued)
sought to withdraw, the court told Smith that "the next attorney you get will have to be the one that represent [sic] you whether you like it or not." This warning, however, was negated by the court's subsequent assurances to Smith, made at later hearings, of a third appointed counsel, and we therefore refuse to consider it as part of our analysis.

Smith, having fired his previous two appointed lawyers, had elected to proceed *pro se*. Yet when examined in context, Smith had done nothing of the sort. Smith, rather than electing to proceed *pro se*, had simply requested another lawyer, a request he made with the court's blessing.

Thus, while it is often true that "[i]f you're given several options, and turn down all but one, you've selected the one you didn't turn down," *Oreye*, 263 F.3d at 670, the "several options" available to the defendant must be clear, *see id.* at 671. Smith was never informed of his options and, without such information, could not possibly have made his decision with "eyes open," as the Supreme Court has required. *See Faretta*, 422 U.S. at 835. It is unreasonable that such a decision, made in these circumstances, could be interpreted as a knowing and voluntary waiver of Smith's Sixth Amendment right to counsel.

Furthermore, we find no waiver in Smith's election to proceed to trial when the court gave him the choice of adjourning the proceedings and waiving his right to a speedy trial. Smith began the day of his trial by renewing his request for appointed counsel. The court denied Smith's request and said, "It's up to you, do you want to go ahead with the trial or do you want to adjourn it? Do you want to waive your right to a speedy trial?" Smith replied simply, "No, I don't want to waive my right."

The problem, again, is that the court gave Smith no real options. True, Smith could have adjourned the day's

proceedings, but what would he have gained? Immediately before giving Smith his "choice," the court reiterated that Smith would be appointed no further counsel, a fact confirmed by the Public Defender's office, which sent a note to the judge just before voir dire indicating that it would not provide Smith another attorney.

Such a Hobson's choice is actually no choice at all. Under these circumstances, we find it unreasonable to recognize Smith's election to proceed to trial as a knowing and voluntary waiver of such an important and fundamental right.

At the time Smith terminated Wilmouth, he did not know, nor did the court warn him, that in so doing he was electing to proceed *pro se*. This is in direct contradiction to Supreme Court precedent, which imposes "*the most rigorous restrictions* on the information that must be conveyed to a defendant, and the procedures that must be observed." *Patterson*, 487 U.S. at 298 (emphasis added).

The Supreme Court has not provided extensive direction on the nature of the "rigorous restrictions . . . [and] procedures" that a court must observe before finding valid waiver of a defendant's right to trial counsel. *See Moya-Gomez*, 860 F.2d at 732; *see also United States v. Hill*, 252 F.3d 919, 925 (7th Cir. 2001) (expressing doubt "that any [procedural] list can be mandated"). *But see Von Moltke*, 332 U.S. at 724 (Black, J., plurality opinion) (stating that a valid waiver "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances

in mitigation thereof, and all other facts essential to a broad understanding of the whole matter").

The Court has said, however, that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); *see also Belanger*, 936 F.2d at 918-19 (suggesting that the judge inform the defendant of the nature of the charged crimes, possible sentences, and the difficulties that accrue from acting as one's own counsel); *Moya-Gomez*, 860 F.2d at 732 (recommending that a court tell a defendant the difficulties of acting *pro se* and encourage the defendant to accept counsel's assistance); *cf. Hill*, 252 F.3d at 928 (eschewing the use of a "check-off list" so long as it is clear that the defendant "understood his options").

We remain mindful of the difficult position in which the Sixth Amendment's parallel rights to assistance of counsel and self-representation can place a trial judge. *See Oreye*, 263 F.3d at 672 (noting that a judge must balance on a "razor's edge" between the two Sixth Amendment rights because "[i]f the judge exaggerates either the advantages of being represented or the disadvantages of self-representation, he will be accused of having put his thumb on the scale"); *United States v. Sandles*, 23 F.3d 1121, 1127 (7th Cir. 1994).

Nonetheless, even the Supreme Court's minimal guidance makes it clear that the procedures followed by the Wisconsin state trial court were inadequate to

demonstrate a knowing and voluntary waiver of Smith's right to trial counsel. As we have alluded to, the court, in a series of interactions that one could only describe as "cursory or by-the-way in nature," *Belanger*, 936 F.2d at 918 (quotations omitted), never made any attempt to ensure that Smith knew his various options and was aware of the dangerous terrain into which he was entering, nor to provide Smith with any guidance on how best to navigate his treacherous course. The court's failure to ensure that Smith understood his options and made an informed decision was a violation of federal law. The Wisconsin Court of Appeals's conclusion to the contrary was unreasonable.

### III. CONCLUSION

For the reasons above, we conclude, first, that we have jurisdiction on appeal. Second, we hold that the Wisconsin Court of Appeals, in determining that Smith knowingly and voluntarily waived his Sixth Amendment right to assistance of counsel, made an unreasonable determination of the facts and unreasonably applied federal law. We REVERSE the decision of the district court and REMAND with instructions to GRANT the petitioner's request for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. If the State elects not to retry Smith within 120 days, he shall be released from confinement.