In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1796

JIMMIE L. MILLER,

*Petitioner-Appellant,*

*v.*

JUDY SMITH, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:09-cv-00335-CNC — **Charles N. Clevert, Jr.**, *Judge.*

ARGUED APRIL 18, 2014 — DECIDED AUGUST 29, 2014

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Jimmie L. Miller ("Miller") was charged in Wisconsin state court on June 7, 2004, with First Degree Sexual Assault of a Child. Miller entered a plea of no contest and was sentenced to ten years in prison followed by twenty years of supervised release. In January 2006, Miller filed a notice of intent to pursue post-conviction relief on the basis that he failed to understand his original plea. The court

appointed Attorney John J. Grau ("Grau") to represent Miller in seeking post-conviction relief.

On January 12, 2007, Grau filed a post-conviction motion seeking resentencing for Miller on the basis that Miller did not understand the terms of his plea agreement. Miller, however, withdrew the motion during a hearing on April 23, 2007.

On May 2, 2007, Grau sent Miller a letter informing him that after reviewing the case file, Grau felt there was no legal basis for pursuing post-conviction relief. At the end of the letter, Grau told Miller he would "set up a call to discuss this matter with you in the next week or so."

Miller did not hear back from Grau for over two months. On July 26, 2007, Miller wrote to Grau asking whether he had prepared their next move. Miller again did not hear back from Grau. On August 7, 2007, Miller wrote to Grau again and told Grau to withdraw his plea of no contest because the state violated the terms of his plea agreement and the plea was not entered knowingly, voluntarily, or intelligently. Miller also wrote that he suffered from a mental disease, was "incompetent" at the time he entered his plea, and has ongoing mental and personality disorders.

Grau called Miller on August 16, 2007, and explained that because the time had expired on Miller's appeal, there was nothing more he could do. Several days later, Miller wrote to the State Public Defender's Office. He informed the office of Grau's inaction and expressed concerns that Grau would seek to file a no-merit report without Miller's consent in order to avoid the consequences of his failure to adequately represent

Miller.[1] Miller also wrote that "competency was an issue" throughout his trial.

Kenneth Lund ("Lund"), the attorney manager for the State Public Defender's Office, wrote to Grau on August 28, 2007, relaying Miller's concerns and requesting that Grau respond to Miller within ten days. Lund also asked Grau to send a copy of the letter to the State Public Defender's Office. On September 12, 2007, Miller wrote to the State Public Defender's Office again, informing them that he had yet to hear from Grau and asked, "Will you take my case?"

Grau eventually responded to Miller in a letter dated September 7, 2007.[2] Miller responded several weeks later, writing that Grau failed to call after he said he would in his original letter on May 2, and that Grau was "making excuses for [his] actions and inactions."

Lund reviewed the correspondence between Miller and Grau and wrote back to Miller on October 10, 2007. Lund stated that the State Public Defender's Office "will not appoint successor counsel when a defendant disagrees with the legal conclusions of appointed counsel or wants a second opinion as to the merits of an appeal." Lund informed Miller that if he disagreed with Grau, he could choose one of three options: (1) release Grau as his attorney and proceed *pro se* with the

---

[1] A no-merit report, also called an "*Anders* Brief," is a procedure for criminal defense lawyers who conclude that no non-frivolous arguments are available for the defendant. *Anders v. California*, 386 U.S. 738 (1967).

[2] Miller admitted that he received Grau's letter dated September 7, but asserted that the letter was not actually sent until September 21.

understanding that "[n]o other attorney will be <u>appointed</u> to represent you for this appeal" (emphasis in original), (2) hire a different attorney at his own expense, or (3) direct Grau to file a no-merit report. The letter concluded with the repeated warning that "[t]he Office of the State Public Defender will not appoint a different attorney for you in this matter." Miller directed Grau to file a no-merit report; Grau failed to do so.

On January 17, 2008, Miller filed a *pro se* petition for a writ of habeas corpus in the Wisconsin Court of Appeals, arguing that he received ineffective assistance of appellate counsel. The court granted Miller's petition, finding that even though Miller directed his counsel to file a no-merit report, Grau ignored his request. The court reinstated Miller's appeal rights and ordered Grau to file either a notice of appeal or a no-merit report. The court stated that "[b]y reinstating Miller's appeal rights, we return Miller to the position he enjoyed before appellate counsel ignored his request for a no-merit report." In regard to Miller's request for new counsel the court advised Miller to seek such relief from the State Public Defender. Miller never did so.

Miller petitioned the Wisconsin Supreme Court to review the Wisconsin Court of Appeals' denial of his request for new counsel; the petition for review was denied. Miller then filed a motion in the Wisconsin Court of Appeals, expressing his desire to discharge Grau by objecting to Grau's ability to file documents on his behalf in any court and claiming a conflict of interest with Grau. The Wisconsin Court of Appeals denied the motion on December 17, 2008. The court found that because Miller's rights to appeal were reinstated, "he is no longer

prejudiced by Attorney Grau's conduct." The court ordered Grau to file a no-merit report no later than January 30, 2009.

On January 8, 2009, Miller wrote to Grau:

> I am directing you **not** to file any papers (legal documents) in my case on my behalf. You are also directed to provide me with any and all papers you have involving my case, as your representation of my case has ended. **I do not want you as my appellate counsel** (emphasis in original).

The next day, the Wisconsin Court of Appeals entered an order recognizing Miller's desire to discharge Grau and proceed *pro se*. The court advised Miller that if he discharged Grau, the court "cannot guarantee that new counsel will be appointed." The court explained,

> Before this court grants Miller's motion to discharge counsel, we will require Miller to confirm that he understands the consequences of asking his counsel to withdraw, including the difficulties and disadvantages of self-representation, and the fact that discharging counsel can constitute a waiver of the right to counsel for postconviction and appellate proceedings.

The court mentioned some of the obligations that Miller would face proceeding *pro se*, such as writing and filing copies of briefs on time, supporting arguments with legal authority, and complying with Wisconsin statutes. As an alternative to self-representation, the court reminded Miller he could take advantage of the no-merit process by having Grau comply with the court's previous order to file a no-merit report; this would allow Miller to then file a response to the no-merit

report raising any matters he finds to have arguable merit for appeal. Finally, the court suggested Miller "carefully consider this order" and "advise the clerk of this court in writing whether he desires to discharge counsel and waive the right to counsel for postconviction and appellate proceedings." The order stated that Grau would remain counsel of record and Miller would not proceed *pro se* until the court was confident that Miller fully understood the consequences of his request. Miller was required to respond to the court's order in writing by January 30, 2009.

Miller filed a response on January 21, 2009, again arguing that he was entitled to new counsel. Miller wrote that he "does not want Attorney John Grau's ineffective representation" and that he "just wants his case file from Attorney John Grau and he will proceed as he has, without Attorney Grau for over a year." On February 11, 2009, the court discharged Grau because it found that Miller, based on his response, waived his right to counsel and sought to proceed *pro se*. While the court acknowledged that Miller claimed he should be appointed new counsel, it said that the issue had already been decided and that "we will not revisit it." The court ordered Miller to file a post-conviction motion or a notice of appeal within seventy-five days; Miller did neither. Instead, Miller wrote to the Wisconsin Court of Appeals stating that he did not intend to proceed *pro se* on his first appeal as of right because he was entitled to new counsel.[3]

---

[3]   Miller also petitioned the United States Supreme Court for a writ of certiorari on January 6, 2009; the petition was denied.

On March 27, 2009, Miller filed a *pro se* petition in the United States District Court for the Eastern District of Wisconsin for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Miller argued that the Wisconsin Court of Appeals' refusal to appoint new counsel violated his Sixth Amendment rights and that since his guilty plea was not entered intelligently, voluntarily, and knowingly, it violated his Fourteenth Amendment rights. The district court denied the petition, finding that Miller "failed to show that the Wisconsin Court of Appeals' adjudication of his claim resulted in a decision that was clearly contrary to established federal law as determined by the United States Supreme Court." The district court reasoned that Miller's appeal rights were appropriately reinstated after the court deemed Grau ineffective, curing any prejudice, and that the Wisconsin Court of Appeals did not need to appoint new appellate counsel. Although Miller claimed that the court "forced" him to discharge Grau and proceed *pro se*, the court reminded Miller that "the right to counsel of choice does not extend to indigent defendants" and that he "refused the benefit of the no-merit process by discharging his appellate counsel voluntarily and proceeding *pro se* on an appeal after being warned by the court of the advantages and disadvantages of self-representation."

Miller appealed to this court.

## DISCUSSION

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may only

grant federal habeas relief if the state court's adjudication of his claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A state court decision is contrary to federal law if the state court applied a rule that is opposite from the law established by the United States Supreme Court or the state court decided the case differently than the United States Supreme Court did in another case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 413 (2000). A state court's application of federal law is deemed unreasonable if it correctly states the controlling legal principle as established by a United States Supreme Court decision but unreasonably applies that principle to the facts of the case. *Id*. at 407–409, 413.

We review a district court's denial of a habeas petition *de novo* and its findings of fact for clear error. *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001).

### A.  Miller's Right to Effective Assistance of Counsel

Miller fails to identify any established federal law that is contrary to the decision of the Wisconsin Court of Appeals. We therefore turn to whether the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it refused to appoint new appellate counsel after it deemed Grau ineffective and reinstated Miller's right of appeal.

The controlling question in our analysis is whether the state court's conclusion was objectively unreasonable, not whether

the conclusion was correct. *Williams*, 529 U.S. at 409–10. Even a clearly erroneous state court decision is not necessarily an unreasonable one. *Badelle v. Correl*, 452 F.3d 648, 654–55 (7th Cir. 2006) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The state prisoner is required to show that the ruling in state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

The United States Supreme Court clarified in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), that there is a substantial difference between the right to effective counsel and the right to counsel of choice. The right to effective counsel is a baseline requirement that a trial court appoint a competent attorney to an indigent defendant. *Id.* at 150. The right to counsel of choice, however, deals with the ability to select a particular lawyer and "does not extend to defendants who require counsel to be appointed for them." *Id.* at 151.

It is undisputed that the Wisconsin Court of Appeals found Grau ineffective because he allowed Miller's appeal rights to expire when he failed to file a timely no-merit report on Miller's behalf. In light of its finding, the court reinstated Miller's appeal rights and ordered Grau to file a no-merit report. This remedy cured any prejudice to Miller and placed him in the position he enjoyed prior to Grau's ineffective assistance; an appropriate remedy given the circumstances. However, instead of allowing Grau to comply with the court's order, Miller wrote to the Wisconsin Court of Appeals expressing his desire to discharge Grau.

Miller points to our holding in *Betts v. Litscher*, 241 F.3d 594 (7th Cir. 2001), and the Wisconsin Supreme Court's holding in *State ex rel. Seibert v. Macht*, 627 N.W.2d 881 (Wis. 2001), to show that courts appoint new appellate counsel for an indigent defendant when his previous counsel abandoned him. These cases are distinguishable from Miller's and merely establish that federal courts have the discretion to choose an appropriate remedy for a defendant who was denied the right to effective assistance of appellate counsel.

In *Betts*, appointed counsel felt that the defendant's appeal lacked merit. Instead of filing a no-merit brief, counsel falsely informed the appeals court that the defendant declined the opportunity to file a no-merit report and requested to proceed *pro se. Id.* at 595. The defendant asserted that he never told counsel he wished to proceed *pro se* and nothing in the record aside from counsel's statement indicated that the defendant wanted to represent himself. *Id.* at 596. In addition, no evidence in the record revealed that the defendant knew of his options regarding the filing of a no-merit report versus firing his counsel and proceeding *pro se. Id.* The state court, however, allowed counsel to withdraw and refused to appoint new counsel, asserting that the defendant waived his right to counsel. *Id.* On appeal, this court determined that the defendant did not waive his right to counsel because he "did not have a chance to discharge [his counsel]; she quit on him." *Id.* We found that the defendant was abandoned by counsel and "must be restored to the position he would have occupied" had the state court not denied him the assistance of counsel on appeal. *Id.* at 597. We remanded with instructions to provide

the defendant a new appeal with the assistance of new counsel. *Id*.

Miller's case is distinguishable from *Betts* for three primary reasons. First, Grau did not leave Miller completely without counsel and was in contact with Miller throughout his appeal process: he prepared a post-conviction motion for Miller in January 2007; appeared at the hearing on the motion in April 2007; wrote to Miller in May 2007, informing him that there appeared to be no basis for pursuing the appeal further; called Miller in August 2007, to explain why he had not been in contact; and again wrote to Miller in September 2007. Grau never refused to represent Miller, or renounced their attorney-client relationship, or falsely informed the court that Miller wished to discharge him and proceed *pro se*. Simply lacking a good rapport with one's appointed counsel does not amount to the contention that a criminal defendant was completely deprived of counsel; the Supreme Court in *Morris v. Slappy*, 461 U.S. 1, 14 (1983), rejected the argument that the Sixth Amendment guarantees this sort of "meaningful relationship." Second, unlike the defendant in *Betts*, Miller expressly told both Grau and the court that he wished to proceed without Grau. And third, the court adequately informed Miller of his options moving forward, as well as the hardships of discharging Grau and proceeding without representation.

This court determined that the appropriate remedy for a defendant deprived of his right to effective counsel was "an opportunity to cure … whatever procedural gaffes [he] committed when he lacked legal assistance." *Id*. at 597. This is precisely the remedy and opportunity that the Wisconsin Court of Appeals gave Miller when it reinstated his appeal

rights and ordered Grau to file a no-merit report, placing him in the position he enjoyed prior to the inadequate representation.

*Seibert* is distinguishable on similar grounds. In *Seibert*, the Supreme Court of Wisconsin recognized that defendant-appellant Seibert was denied his "constitutional right of counsel—including the right to effective assistance of counsel—on his first appeal as a matter of right." *Id.* at 886, 889. The court explained that counsel "left petitioner completely without representation during the appellate court's actual decision process" which made his case "quite different from a case in which it is claimed that counsel's performance was ineffective." *Id.* at 888. The court found that Seibert's right to appeal should be reinstated due to the "denial of counsel" and so remanded the case to the Wisconsin Court of Appeals, with instructions to "appoint Seibert new appellate counsel." *Id*. at 889.

Here, Miller was not left "completely without representation" during his appeal process: Grau was deemed ineffective only because of his failure to timely file a no-merit report. However, even had the court determined Miller's constitutional right to counsel was denied, the Wisconsin Supreme Court explained in *Seibert*, that the appropriate remedy was to reinstate the petitioner's right to appeal. That is precisely what the Wisconsin Court of Appeals did here: reinstated the appeal rights and ordered Grau to file a no-merit report. Moreover, upon reinstating his appeal rights, the court specifically told Miller that if he sought new counsel, he would have to seek such relief from the State Public Defender's Office. Miller did

not attempt to make a request to the State Public Defender's Office for new counsel.

We have previously determined that "[d]efendants may have an unconditional right to counsel on appeal, but they do *not* have a right to counsel who pretend that frivolous arguments actually are meritorious." *Speights v. Frank*, 361 F.3d 962, 964 (7th Cir. 2004) (emphasis in original). Once Miller, an indigent defendant, actively chose to discharge Grau, the state court was not unreasonable in finding that Miller did not have the right to receive another lawyer to represent him simply because Grau's assessment of his appeal was that it lacked merit. The cases cited by Miller reveal just one of the possible remedies a court may choose when dealing with a criminal appellant who has been abandoned by counsel or suffered a deprivation of rights due to ineffective counsel. *See Evitts v. Lucey*, 469 U.S. 387, 399 (1985) (citing cases showing the various remedies available to federal courts in accordance with reasonable procedural rules). While courts may appoint new counsel to defendants as a remedy, they are not required to do so; there is no established federal law or United States Supreme Court holding that guarantees an indigent defendant the right to a choice of counsel.

### B. Miller's Waiver of Right to Counsel

The waiver of right to counsel must "not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). In order for Miller to have waived his right to counsel, Miller must have had knowledge of his right through appropriate warnings from the court and the record must show his voluntary intent to waive that right.

*Id.* We may determine whether a waiver was voluntary based not only on a defendant's words, but also on his conduct. *Smith v. Grams*, 565 F.3d 1037, 1045 (7th Cir. 2009).

Miller claims that he did not waive his right to counsel because he was faced with a "Hobson's Choice" between proceeding *pro se* or continuing with the attorney that was deemed ineffective. Relying on our decision in *Smith*, Miller argues that he did not actually have a choice at all when he discharged Grau. In *Smith*, the trial court gave defendant the choice to proceed to trial *pro se* or waive his right to a speedy trial altogether. *Id.* at 1046. On appeal, this court found that the defendant did not waive his right to counsel because he was in fact given "no real options," but rather only the option of self-representation. *Id.* at 1045. Additionally, the defendant in *Smith* "did not know, nor did the court warn him, that in [discharging his attorney] he was electing to proceed *pro se*." *Id.* at 1046.

That is not the case here—Miller was given a viable option that did not require him to waive any additional rights. Miller was given the option to allow Grau to obey the Wisconsin Court of Appeals' order to file a no-merit report on Miller's behalf or proceed on his own. Defendants in Miller's position "cannot claim a constitutional entitlement to avoid making that decision, even though from [his] perspective it amounts to a choice among evils." *Speights*, 361 F.3d at 964. Without giving Grau the chance to comply with the court's order to file a no-merit report, Miller merely predicts that Grau will not perform on time as he should have before.

The Wisconsin Court of Appeals clearly informed Miller that discharging Grau would require him to proceed *pro se* and the court warned him of the difficulties of self-representation.

"The requirement of voluntariness does not itself require explanations and advice about the risks and benefits of each choice" and "[t]he [United States] Supreme Court has never held that waivers of counsel at any stage of the proceedings other than trial require [] a give-and-take between the accused and someone trying to educate him about counsel's benefits." *Id*. at 964–65. While it may be insufficient to merely warn a defendant of the possibility that he might have to proceed without counsel, *Patterson v. Illinois*, 487 U.S. 285, 298 (1988), Miller received abundantly more than a simple warning. The court informed Miller of his rights on appeal, his options going forward, and that proceeding *pro se* would require Miller to be responsible for difficult tasks such as drafting and timely filing motions and copies of briefs, making coherent arguments supported by legal authority, presenting evidence, and arranging for the appearance of necessary witnesses. The court adequately explained to Miller the warnings and procedures that accompany a voluntary waiver of the right to counsel.

As an added precaution, rather than assume Miller waived his right to counsel when he told the court he wished to proceed without Grau, the Wisconsin Court of Appeals requested a written acknowledgment from Miller that he was discharging Grau, proceeding *pro se*, and that he fully understood the barriers and consequences that may accompany self-representation. Miller submitted that acknowledgment on January 21, 2009, writing that he "does not want Attorney John Grau's ineffective representation" and that "he will proceed as he has, without Attorney Grau … ." This court has held that such a "straightforward assent is enough on appeal" to constitute voluntary waiver. *Speights*, 361 F.3d at 965.

Miller then argues that his waiver of the right to counsel was not knowing or voluntary based upon his personal characteristics. Miller graduated from high school, but states that he was enrolled in special education classes. Miller also claims to have "mental and personality disorders" and "the reading and comprehension level of a fourth grader." However, Miller never suggested that he was unable to understand his choices. Miller is literate in English, has at least some education, and was capable of reading, writing, and submitting coherent letters and legal documents throughout the appellate process. While Miller states that he received assistance in writing his various letters and motions, the record adequately demonstrates that Miller fully understood his choice.

A combination of the specific options described to Miller by both the court and the State Public Defender's Office, the Wisconsin Court of Appeals' clear warnings regarding the dangers and disadvantages of proceeding *pro se*, and Miller's straightforward submission to the court that "he will proceed as he has, without Attorney Grau" created a reasonable basis for the court to find that Miller voluntarily and knowingly confirmed his desire to waive his right to counsel. *See, e.g.*, *United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002) ("Because representation by counsel and self-representation are mutually exclusive entitlements, the assertion of one right constitutes a *de facto* waiver of the other."); *United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001) ("If you're given several options, and turn down all but one, you've selected the one you didn't turn down."); *United States v. Irorere*, 228 F.3d 816, 828 (7th Cir. 2000) ("[T]he defendant had been given the

opportunity to proceed with counsel, but through his own conduct had made that impossible.").

## C.  Procedural Default of Miller's Guilty Plea Challenge

Finally, the district court found that Miller cannot withdraw his guilty plea because he failed to raise that claim at the state court level and it is now procedurally defaulted. Miller argues that he never had the chance to make this argument due to Grau's ineffective assistance. "We review *de novo* a district court's determination of procedural default." *Lee v. Davis*, 328 F.3d 896, 899 (7th Cir. 2003).

A procedurally defaulted claim may only be reviewed by the federal courts when the prisoner shows cause for his procedural error and actual prejudice that resulted from that error. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (superceded by statute on other grounds). To show cause, Miller argues that Grau abandoned him; he contends that prejudice is assumed when a defendant is abandoned.

Miller is responsible for the procedural default of his guilty plea; when Grau was initially appointed to represent Miller, Grau prepared and filed a post-conviction motion setting forth Grau's argument for resentencing. Miller made the voluntary choice to withdraw that motion before it could be heard by the state court. Then Miller told Grau to file a no-merit report, a direction Grau failed to follow before time expired, which led to the determination that Grau was ineffective. If the Wisconsin Court of Appeals never reinstated Miller's appeal rights at this point, we would have a different case.

But that is not the end of the story. After the court determined that Grau was ineffective for failing to file a no-merit

report, it reinstated Miller's appeal rights and ordered Grau to file a no-merit report. The purpose of the no-merit process is to give Miller the added protection of having the appellate court review his record independently and determine whether meritorious issues exist in order to directly appeal. *See Anders v. California*, 386 U.S. 738, 744 (1967) (establishing the no-merit process). Miller refused the opportunity for this added protection when he informed the Wisconsin Court of Appeals that he would continue his appeal *pro se*. Since Miller discharged Grau before he could prepare a no-merit report pursuant to the court's order, Miller actively refused the benefit of the no-merit process.

After Miller discharged his appointed counsel, the court directed him to file either a post-conviction motion or a notice of appeal, providing Miller with yet another opportunity to raise his claim about the validity of his guilty plea. Miller failed to file either, and the time to do so expired. Miller failed to offer a reason that would excuse his failure to comply with the state procedural requirements. *Coleman*, 501 U.S. at 753.

The Wisconsin Court of Appeals' denial of Miller's request for new appellate counsel was not clearly contrary to or an unreasonable application of clearly established federal law and his challenge to the validity of his plea is procedurally defaulted. Accordingly, the district court order is AFFIRMED.